---

(120 App. Div. 474)

### FROELICH v. INTERBOROUGH RAPID TRANSIT CO.

(Supreme Court, Appellate Division, Second Department. June 7, 1907.)

**1. RAILROADS—INJURIES TO PERSON ON TRACK—LICENSEES.**

An employé of a switch and signal company, which had a contract with defendant railway company to install switches and signals, was not a mere licensee on defendant's tracks while engaged in work under that contract.

**2. SAME—NEGLIGENCE—DUTY TO GIVE SIGNALS—QUESTION FOR JURY.**

In an action against a railway company for the negligent killing of a person on its track, whether it was defendant's duty to give a signal, at a curve, of the approach of its train, *held*, in the absence of statute relating thereto, a question for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 1373.]

Appeal from Trial Term, Kings County.

Action by Emma Froelich, administratrix, against the Interborough Rapid Transit Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Action for damages for death of the plaintiff's husband. He left no next of kin.

The decedent was killed in the subway in Manhattan by being hit by an express train on October 31, 1904. He was there in the employment of the Union Switch & Signal Company, which had a contract with the defendant to furnish and install switches and signals, and had men all along the tracks of the defendant engaged in that work. The railroad has four tracks, the two inner being express tracks, north and south, and the two outer local. The deceased was walking north along the northbound express track. He stepped off the track to his left out of the way of a train coming behind him. The space between the north and south express tracks is 6 feet, and the space between trains 3 feet, their overhang being 18 inches. Along the center line of this space are a row of upright iron columns 5 feet apart. The deceased crossed this space, stepped on to the southbound express track, and was immediately hit by a southbound express train and killed. There is evidence that before stepping upon the southbound track he looked north. The accident happened about 40 feet north of the north end of the southbound platform of the Fourteenth Street station. That platform is 350 feet long, and the train that killed the deceased, like all express trains, was about to and did stop at it. It was going fast when it hit the deceased. There

was one eye witness who testified for the plaintiff. He was at the time of the accident employed by the defendant, but not at the time of the trial. He said he saw the deceased look north before going on the southbound track, but that owing to a sharp curve of the tunnel and tracks at or near that point the deceased could not see a train coming from the north farther away from him than 50 feet. There was a switch on the southbound track, 5 or 10 feet from the place of the accident, that the deceased was about to inspect to see that it was in order and working properly, and do any necessary work on. Other facts appear in the opinion.

Argued before JENKS, HOOKER, GAYNOR, RICH, and MILLER, JJ.

Cyrus C. Miller, for appellant.

Lewis E. Carr (John M. Gardner, on the brief), for respondent.

GAYNOR, J. The complaint contained four grounds of negligence, (1) that the subway lights were out, (2) that the front lights of the train were out, (3) that no warning of the approach of the train was given by blowing the whistle or otherwise, and (4) that the train was running at an excessive rate of speed and not under control. During the course of the trial the learned counsel for the plaintiff withdrew the first and second, and the learned trial judge withdrew the fourth in his charge; so that only the question of warning was left. It was insisted for the plaintiff that the defendant owed the duty of giving such warning, for the reason that there was a curve at or immediately north of the place of the accident, which prevented the deceased from seeing the train approach until it got within fifty feet of him. The defendant insisted from first to last, as its main point, that it owed the deceased no duty of due care, for the reason that he was a licensee; whereas he was not a licensee, but was there by the express invitation and agreement of the defendant with his employer, engaged in doing work for the defendant on its tracks. It was also insisted in the same way that the defendant could not be under any duty to blow the whistle with which the car was equipped. That there is no such statute duty is no foundation for the claim that there is no such duty. The confusion on the subject seems to have arisen when the statute requiring the giving of signals by bell and whistle at railroad crossings was repealed. It has ever since been insisted that railroad companies have no duty to give such warning signals at all. They no longer have such a statute duty, it is true, but in a given case they may have a common law duty to give such a warning, and in the same way it was at least a question for the jury whether this latter duty did not apply to this case. It was for the jury to say whether the defendant, knowing that the deceased and his companions were strung along its track at work, should not at curves give a signal of the approach of trains, or exercise some similar care.

The judgment should be affirmed.

Judgment affirmed, with costs. All concur.