VERT A. BLANCHARD, Appellant, *v.* THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, Respondent.

Master and servant — railroads — negligence — duty of engineer of railroad train, running behind schedule time, to give warning of approach of train for protection of men working on tracks and bridges.

A foreman of a gang of men at work on a bridge was caught and injured between two trains running in opposite directions, while he was attempting to cross in connection with his duties, one of the trains being behind its schedule time. A rule of the railroad company required that "On delayed regular trains and extra trains, keep a sharp lookout for trackmen and hand cars and sound the whistle signal when approaching points obscured to the view." It was the defendant's duty under these circumstances to give the plaintiff seasonable warning of the approach of the train, since the jury could have found that in the exercise of reasonable prudence the defendant should have foreseen that one of the men might be caught unawares in a place of danger on the bridge, the simple precaution of sounding the whistle would have guarded against accident, and plaintiff was not negligent as matter of law in attempting to cross the bridge relying on the assumption that such signal would be given.

*Blanchard* v. *D.*, *L.* & *W. R. R. Co.*, 139 App. Div. 921, reversed.

(Argued March 5, 1914; decided April 14, 1914.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered July 22, 1910, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Thomas M. Losie* for appellant. The failure of the master to fulfill the duty cast upon him by law of fur-

nishing a servant a reasonably safe place in which to work is negligence. The duty of furnishing a safe place to work includes the duty to keep it safe, and to warn of hidden or approaching dangers. If the business of the master is such or so carried on that it is impossible to maintain the place furnished in which to work reasonably safe by reason of the carrying on of other business of the master than that in which the particular servant is engaged, it is the duty of the master to give warning of such danger so that the servant in the exercise of reasonable care can avoid being injured. (*McGovern* v. *C. V. R. R. Co.*, 18 N. Y. 280; *Felice* v. *N. Y. C. & H. R. R. R. Co.*, 14 App. Div. 345; *Johnson* v. *Terry & Tench Co.* 113 App. Div. 762; *Gorman* v. *B. H. R. R. Co.*, 131 App Div. 207; *Di Napoli* v. *N. Y., N. H. & H. R. R. Co.* 136 App. Div. 336; *Palmijiano* v. *Hyde-McFarland Co.* 126 App. Div. 221; 194 N.Y. 524; *Eastwood* v. *Retzof Mining Co*, 86 Hun, 91; *Inglese* v. *N. Y., N. H. & H. R. R Co.*, 133 App. Div. 198; *Sheehan* v. *N. Y. C. R. R. Co.* 91 N. Y. 332; *Fitzgerald* v. *Erie R. R. Co.*, 158 App. Div 801.) It cannot be said as a matter of law that plaintiff in crossing to the other track, and continuing on his course facing the direction in which a train must come, if one did come, was guilty of contributory negligence. (*O'Brien* v. *Erie Ry. Co.*, 123 N. Y. Supp. 1040; *Thurber* v. *H. B. M. & F. R. R. Co.*, 60 N. Y. 326; *Di Sario* v. *N. Y., O. & W. R. R. Co*, 142 App. Div. 159; *Sereno* v. *D., L. & W R. R. Co.*, 145 App. Div. 136; *McGovern* v. *C. V. R. R Co.*, 123 App. Div. 280; *Felice* v. *N. Y. C. & H. R. R R. Co.*, 14 App. Div. 345.)

*Alexander D. Falck* for respondent. Assuming that train No. 2 was not a delayed train and that rule 564 did not apply to it, the jury could not have been permitted to find that the defendant negligently omitted to have a rule or order requiring regular trains on time to whistle in the cut on approaching this bridge. (*Rose* v. *B. & A*

*R. R. Co.*, 58 N. Y. 217; *Potter* v. *N. Y. C. & H. R. R. R. Co.*, 136 N. Y. 77; *Berrigan* v. *N. Y., L. E. & W. R. R. Co.*, 131 N. Y. 582; *Larow* v. *N. Y., L. E. & W. R. R. Co.*, 61 Hun, 11; *Kozlowski* v. *Am. Locomotive Co.*, 96 App. Div. 40; *Wolfinger* v. *B. H. R. R. Co.*, 121 App. Div. 142; *Morgan* v. *Hudson R. O. I. Co.*, 133 N. Y. 666; *Ely* v. *N. Y. C. & H. R. R. R. Co.*, 88 Hun, 322.) There was no obligation resting upon the defendant to give the plaintiff actual warning of the approach of train No. 2. (*Hickey* v. *Taaffe*, 105 N. Y. 26; *White* v. *Wittemann Lithographic Co.*, 131 N. Y. 631; *Pollitt* v. *Kings Co. E. R. R. Co.*, 32 N. Y. S. R. 954; 126 N. Y. 630; *Boldt* v. *N. Y. C. & H. R. R. R. Co.*, 18 N. Y. 432; *McLaughlin* v. *Manhattan Ry. Co.*, 111 App. Div. 254; *Brady* v. *N. Y. C. & H. R. R. R. Co.*, 127 App. Div. 347; *Di Napoli* v. *N. Y., N. H. & H. R. R. Co.*, 136 App. Div. 334.) The motion for a nonsuit was properly granted upon the ground of the contributory negligence of the plaintiff. (*Tomko* v. *Central R. R. Co.*, 1 App. Div. 289; *Sullivan* v. *Third Avenue R. R. Co.*, 19 App. Div. 195; *McLaughlin* v. *Manhattan Ry. Co.*, 111 App. Div. 254; *Keating* v. *Manhattan Ry. Co.*, 110 App. Div. 108; *Brady* v. *N. Y. C. & H. R. R. R. Co.*, 127 App. Div. 347; *Dangelo* v. *L. S. & M. S. R. Co.*, 127 App. Div. 835.)

MILLER, J. The action is for personal injuries. The plaintiff was employed by the defendant as foreman of a gang of painters, about sixteen in number, who were engaged in scraping, preparatory to painting, an overhead steel truss bridge on the defendant's main line a few miles west of Binghamton. The bridge consisted of six spans, each one hundred and sixty-four feet long, resting on piers. There were two tracks across the bridge. The space between the tracks from center to center of the guardrails was five and two-tenths feet. The floor beams or girders of the bridge were seventeen and eight-tenths

feet apart. The accident occurred on the 2d day of August, 1905. The men had been at work on the bridge since July 26th, 1905. On the morning of the accident the men were divided into two gangs. One was at work on the east end of the bridge and the other on the west end. Shortly before the accident the plaintiff had gone from the west to the east end of the bridge for the purpose of instructing one of the men there to take a handcar, after the passage of an east-bound passenger train which was expected, and to go to Lestershire, a mile east of the bridge, for the purpose of procuring some tools and materials which one of the men had neglected to bring with him in the morning. After giving that direction, the plaintiff started back over the bridge. After proceeding about a span and a half on the west-bound track, he heard a freight train approaching from the east and, stepping over on to the east-bound track, he continued toward the west end of the bridge. When near the center of the third span, he discovered a passenger train near the west end of the bridge which was approaching at a speed of fifty-five or sixty miles an hour. The freight train was then passing and the engine had passed beyond the bridge. The plaintiff sought the nearest point of safety between the tracks on one of the girders but did not have time to adjust himself so as to prevent being hit. There was a curve and a cut commencing a trifle over seven hundred feet west of the bridge. The plaintiff testified in substance that, though he did not know the exact running time of the trains, he did know that it was about time for the passenger train and was watching and listening for it; that, on previous occasions, trains approaching from the west had always sounded the whistle before coming out of the cut west of the bridge; that he was listening for the whistle of this train, and that, if it had been sounded, he could have got to a place of safety. There was evidence from which a jury could have found that the passenger train was from ten to thirteen or fourteen

minutes late, that it did not sound the whistle and that the plaintiff's view of it was obscured by a fog and the smoke from the engine of the freight train. A rule of the company provided: " On delayed regular trains and extra trains, keep a sharp lookout for trackmen and hand cars and sound the whistle signal (Rule 14 L) when approaching points obscured to the view."

The decision of this case turns on the point whether it was the defendant's duty to give the plaintiff seasonable warning of the approach of the passenger train. We are of the opinion that that question cannot be decided adversely to the plaintiff as matter of law. If one of the men under the plaintiff had been injured, the case would be plain. They could not do their work and be constantly on the lookout for trains. The plaintiff, while merely supervising the work at either end of the bridge, might be expected to keep a lookout. Indeed, it might be his duty to the men under him to do that or to provide for its being done, though the defendant does not appear to have given any instructions on the subject. But if, as occurred, two trains met on the bridge while he was attempting to cross it, he was in great peril unless seasonably warned. If his duties required him to cross the bridge, he could not stand about waiting for a delayed train or until sure that no train would arrive while he was upon the bridge. The trial court excluded evidence to show that he was not furnished a schedule of the running time of trains. The jury could have found that in the exercise of reasonable prudence the defendant should have foreseen that one of the men might be caught unawares in a place of danger on the bridge, and that the simple precaution of sounding the whistle would have guarded against accident.

The principle applicable to this case has been stated nowhere better than by Mr. Justice RUMSEY in *Felice* v. *N. Y. C. & H. R. R. R. Co.* (14 App. Div. 345, 347), wherein he said: "It is the duty of the master to use

reasonable care to provide for the servant, so far as the work at which he is engaged will permit, a reasonably safe and proper place in which to do his work, and to that end, if the place may become dangerous by reason of perils arising from the doing of other work pertaining to the master's business, different from that in which the particular servant is engaged, to give him such warning of the additional dangers as will enable him, in the exercise of reasonable care, to avoid them, or to guard himself against them," citing *Pantzar* v. *Tilly Foster Iron Mining Co.* (99 N. Y. 368) and *McGovern* v. *Central Vermont R. R. Co.* (123 N. Y. 280). The principle is plain and familiar, though precisely the same application of it does not appear to have been involved in any case in this court. There have been many cases in the Supreme Court in which the principle has been applied to determine the liability of a railroad company or an independent contractor for injuries to workmen on the tracks caused by a failure to give warning of approaching trains. A few only need be cited. (*Wells* v. *Brooklyn Heights R. R. Co.*, 67 App. Div. 212; *Johnson* v. *Terry & Tench Co.*, 113 App. Div. 762; *Froehlich* v. *Interborough Rapid Transit Co.*, 120 App. Div. 474.) The principle is the same whether the workmen are in the employ of the railroad company or an independent contractor. If the duty to give warning exists, the railroad company and the immediate employer may both be negligent for not seeing that it is discharged; and, if there is negligence in the discharge of that duty, the master is not relieved by the fact that it was the negligence of a fellow-servant.

What has been said disposes of the question of contributory negligence and assumed risk. If it was the defendant's duty to give the warning the plaintiff was not negligent as matter of law in attempting to cross the bridge relying upon the assumption that it would be given.

The judgment should be reversed and a new trial ordered, costs to abide the event.

WILLARD BARTLETT, Ch. J., WERNER, HISCOCK and HOGAN, JJ., concur; CHASE, J., dissents; COLLIN, J., not sitting.

Judgment reversed, etc.