# Louisville & Nashville R. R. Co. *v.* Williams, as Adm.

### Death Action.

(Decided December 21, 1916. Rehearing denied February 16, 1917.
74 South. 383.)

1. **Master and Servant; Injuries to Servant; Servant of Independent Contractor; "Employee."**—Where plaintiff's intestate in his work as foreman of laborers in repair of a bridge by an independent contractor was under the control and orders of the defendant railroad's civil engineer, the intestate was an employee of defendant, and not a mere license, in so far as the question of defendant's liability for his death caused by one of its trains was concerned.

2. **Pleading; Construction.**—The character of a pleading is to be determined from the facts averred.

3. **Master and Servant; Injuries to Servant; Employers' Liability Act.**— A complaint averring that defendant operated a line of railroad which crossed a creek on a bridge then undergoing repair by a construction company at both ends of the bridge, and under the supervision of defendant's civil engineer, the laborers operating under the superintendence of plaintiff's intestate, and that intestate while crossing the bridge in discharge of his duty with defendant and in a place where it was necessary for him to be was killed by one of defendant's passenger trains, and that defendant's employees in charge of such trains owed intestate the duty to keep a lookout, and, failing to keep such lookout, they failed to discover him in time to avoid

[Louisville & Nashville R. R. Co. v. Williams, as Adm.]

injuring him, held sufficient to bring the case under Employers' Liability Act (Code 1907, section 3910, subd. 5), making an employer liable for injury to servant as though a stranger when such injury is caused by negligence of a coemployee who has control of a locomotive, etc.

4. **Master and Servant; Injury to Servant; Question for Jury.**—In an action for death of railroad employee while on track on railroad bridge in performance of his duties, whether those in charge of the train which killed deceased exercised due care in keeping a lookout held for the jury, and hence the affirmative charge was properly refused.

5. **Master and Servant; Injury to Servant; Employees Working on Tracks; Duty to Keep Lookout.**—Where plaintiff's intestate was engaged in superintendence of laborers repairing a railroad bridge, and his duties took him upon the tracks, it was the duty of those in charge of an approaching train to keep a lookout.

6. **Master and Servant; Injury to Servant; Question for Jury.**—Whether deceased was guilty of contributory negligence held for the jury.

7. **Trial; Injuries to Servant; Instructions.**—An instruction predicating a verdict for defendant if intestate stepped upon defendant's tracks without first stopping, looking, and listening was misleading, where the evidence tended to show that at the time intestate started across the bridge the train was not in sight.

8. **Trial; Injuries to Servant; Instructions.**—An instruction charging intestate with contributory negligence as a matter of law if intestate stepped upon defendant's tracks without first stopping, looking, and listening was misleading for the same reason.

9. **Master and Servant; Injury to Servant; Evidence; Sufficiency.**—Evidence held to support a verdict for plaintiff, as against a motion for new trial on the ground that it was against the great weight of the evidence.

(McClellan and Mayfield, JJ., dissenting.)

APPEAL from Morgan Circuit Court.

Heard before Hon. R. C. BRICKELL.

Action by P. E. Williams as administrator of the estate of W. M. Williams, deceased, against the Louisville & Nashville Railroad for damages for the death of his intestate. Judgment for plaintiff and defendant appeals. Affirmed.

EYSTER & EYSTER for appellant. TENNIS TIDWELL and SAMPLE & KILPATRICK for appellee.

GARDNER, J.—Appellee, as administrator of the estate of W. M. Williams, deceased, brought this suit against the appellant for recovery of damages for the death of his intestate caused by his being run over by one of the trains operated by appellant.

There were originally five counts in the complaint, but the fifth count went out on demurrer, and counts 1, 2, and 3 were

charged out by the court on request of the defendant. The case therefore went to the jury on count 4. This count shows that on August 19, 1912, the defendant was engaged in operating a line of railway through Morgan county; that at a certain point said railway track crossed a creek on a bridge then undergoing repairs by the Williams Construction Company; that said repair work was in progress on each side of the creek at the ends of the bridge, being under the supervision and direction of defendant's civil engineer, one C. A. Ligon; and that the construction company commenced their work on the morning of August 19th, the laborers operating under the superintendence of plaintiff's intestate.

The count further alleges that plaintiff's intestate started across the bridge to look after the work progressing at the northern end; that in so doing he was "in the discharge of his duty with the defendant, and in a place where it was necessary for him to be in the discharge of his said duty." It is then averred that while plaintiff's intestate was thus walking on the bridge one of defendant's passenger trains, approaching from the south, ran upon and killed him. It is further averred that the agents or servants of the defendant in charge of said train owed the intestate the duty to keep a lookout, and that, failing to keep such lookout, they failed to discover him in time to avoid injuring him.

(1-3) This count was not subject to any of the assignments of demurrer addressed thereto. Plaintiff's intestate in his work was under the supervision and orders of the defendant's civil engineer. Under the following authorities the intestate was an employee of the defendant, in so far as the question here involved is concerned: *Dallas Co. v. Townes,* 148 Ala. 146, 41 South. 988; *Townes v. Dallas Co.,* 154 Ala. 612, 45 South. 696; *Harris v. McNamara,* 97 Ala. 181, 12 South. 103; *T. C. & I. Co. v. Hayes,* 97 Ala. 204, 12 South. 98; *Lookout Mt. Co. v. Lea,* 144 Ala. 169, 39 South. 1017; *Warrior-Pratt Co. v. Shereda,* 183 Ala. 118, 62 South. 721. The character of pleading is to be determined from the facts averred.—4 Mayf. 447; *Rogers v. Brooks,* 99 Ala. 31, 11 South. 753. The facts averred are sufficient, as against any assignments of demurrer interposed, to bring the case under subdivision 5 of the Employers' Liability Act.

Appellant's counsel insist that the count shows that plaintiff's intestate was a mere licensee, and that the defendant owed him

no duty to keep a lookout for him, citing Elliott on Railroads, vol. 3, § 1250. This author's treatment of the question in the said section is without application here. In the same volume, in section 1265b, speaking of the duty due by those operating trains to persons lawfully at work on the track, it is said: "The law does not require persons at work on the track to maintain a constant lookout for approaching trains and at the same time pursue their labor, but it does require of the operatives of trains the exercise of an active vigilance to avoid injuring such persons and that they should give reasonable danger signals to attract the attention of men so employed so as to enable them to get out of the way before it is too late."

To the same effect is the language of Mr. Thompson, in his work on Negligence, § 1839-1840, which read in part as follows: "Persons lawfully at work in repairing a railway track, or in repairing a highway where it crosses a railway track, cannot be expected to pursue their labors and at the same time maintain a constant lookout for an approaching train. They are passive, and are not a source of danger to the train. Those who are driving the train are active, and are handling and in control of the instrument of danger and mischief. The obligation of reasonable care which the law puts upon the railway company under these circumstances therefore demands nothing less than an active vigilance in favor of persons thus lawfully at work upon the track, and the giving of seasonable danger signals to arouse their attention and enable them to get out of the way before it is too late.

"A person employed by one who has entered into a contract with the railroad company to do a job of work upon its road is obviously entitled to this measure of care. * * * A person thus employed by an independent contractor is neither a servant of the railroad company nor a trespasser on its track, and, if free from contributory negligence, is enittled to recover for injuries inflicted upon him by the negligence of the servants of the company."

See, also, 33 Cyc. 764, where it is said: "Where one is engaged on or about railway tracks or cars in work which is mutually beneficial to himself and the railroad company, and his work requires him to go on such tracks or cars, his going thereon when required is generally held to be by the express or implied

[Louisville & Nashville R. R. Co. v. Williams, as Adm.]

invitation of the railroad company, and he is neither a trespasser nor a mere licensee."

The New York court in a somewhat similar case, replying to the argument of counsel that the deceased was a mere licensee, said: "The defendant insisted * * * it owed the deceased no duty of due care, for the reason that he was a licensee; whereas, he was not a licensee, but was there by the express invitation and agreement of the defendant with his employer engaged in doing work for the defendant on its tracks."—*Froehlich v. Interborough Transit Co.*, 120 App. Div. 474, 104 N. Y. Supp. 910.

See, also, in this connection, *L. & N. R. R. Co. v. Thornton*, 117 Ala. 274, 23 South. 778; *A. G. S. Ry. v. Skotzy*, 196 Ala. 25, 71 South. 335, and 41 Cent. Dig. "Railroads," § 1225.

The evidence for plaintiff tended to show that, while this track was used by the defendant company, the contract for the repair of the bridge was between the Williams Construction Company, a corporation, and the South & North Alabama Railroad Company, but payment for the work was guaranteed by the defendant railroad company; that the work was to be done under the supervision and direction of defendant's said civil engineer, Ligon, and that plaintiff's intestate was merely superintending the laborers engaged; that Ligon was with the intestate on the bridge giving him directions in regard to the repairs, the two walking together from the south to the north end, but that deceased returned to the south end, where he remained for a few minutes watching the laborers at work just beneath the bridge; that intestate again proceeded to cross the creek, on the bride, towards the north, to oversee the workers there. The bridge is shown to have been about 160 feet in length and about 15 feet wide.

The evidence for the plaintiff further tended to show that at the time his intestate started to return to the north end of the bridge the train was not in sight nor within hearing, and that he walked in the center of the track; that the train which struck him was a passenger train, approaching from the south and moving at a speed of 40 or 45 miles an hour; and that the track south of the bridge was straight for three-fourths of a mile. Some of the witnesses for the defendant gave the length of straight track as one mile. The evidence further tended to show that the deceased had been walking on the bridge a minute and a

half and had gotten about halfway across before the train reached it.

The evidence of the engineer placed the deceased as 'two-thirds of the way towards the north end." No signal of approaching was given; the engineer testifying, "I never gave any signal at all before the train was stopped." He insisted that he had kept a constant lookout on the track, and that he did not see deceased until he got within a short distance of him, when deceased stepped from behind an upright brace of the bridge and when it was too late to do anything to save him. The engineer further testified that the track was straight and level, and that if deceased had been in the center of the rails of the track he would have seen him. The accident occurred at about 9:30 o'clock in the morning.

(4) In view of the evidence for plaintiff tending to show the distance the deceased had walked down the bridge, and the time consumed therein, with the track straight and level for a mile toward the south, and of the evidence of the engineer that had deceased been in the center of the track he could have seen him, it was a question for the jury whether those in charge of the approaching train exercised due care in keeping a lookout.

(5) The evidence tended to show that the deceased was rightfully on the track in the discharge of his duty; and, under the authorities above quoted, those in charge of the approaching train were under the duty to keep a lookout. It was admissible for the jury to infer from the evidence that had the engineer kept a lookout he could and would have discovered the deceased on the track in time to give a warning signal, and have had an opportunity to avert the accident. The affirmative charge was therefore properly refused the defendant.

(6-8) We deem it unnecessary to treat in detail each of the refused charges. Several which assumed that the deceased was either a trespasser or a mere licensee were properly refused. Whether deceased was guilty of contributory negligence was for the jury to determine. Other refused charges predicated a verdict for defendant, or charged the intestate with contributory negligence as a matter of law, "if he stepped upon defendant's tracks without first 'stopping, looking, and listening.'" These charges were misleading, for that the evidence for plaintiff shows (and there seems to be none to the contrary) that at the time intestate started across the bridge the train was not in sight nor

within hearing. If the charges had reference to the testimony of the engineer to the effect that deceased stepped suddenly upon the track from behind one of the braces of the bridge, this phase of the case was not only covered by the general charge of the court, but by special charges given at defendant's request. Some of the refused charges were evidently intended to refer to the theory of the case presented by count 1, which rested for recovery upon subsequent negligence, and which was afterwards charged out by the court. This had special reference to refused charge numbered 8. Refused charge numbered 11 was substantially covered by charges given at the request of the defendant. The defendant reserved an exception to the general charge of the court, but its objection, as we gather from the brief of appellant's counsel, related only to that particular phrase "if plaintiff's intestate was an employee of defendant;" the insistence being that the evidence shows that the intestate was an employee of an independent contractor. The remaining portion of the oral charge excepted to does not seem to have met with objection.

What we have herein stated with reference to the complaint suffices to show that we find no error in that portion of the oral charge excepted to.

(9) Upon a careful examination of the record we are not persuaded that a reversal could be properly predicated on the refusal of a new trial on the ground that the verdict was contrary to the great weight of the evidence.

The judgment of the court below is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE, SOMERVILLE, and THOMAS, JJ., concur. MCCLELLAN and MAYFIELD, JJ., dissent.

MAYFIELD, J.—I am constrained to dissent in this case because I am convinced that both the opinion and the decision are wrong. In my judgment, count 4, the sole count which went to the jury, was not in law or in fact, nor intended by the pleader to be, a cause of action under the Employers' Liability Act, but was intended to state a cause of action under section 2486 of the Code, known to us as the homicide statute. It is perfectly clear and certain that it was treated by the trial court and the defendant as being under the homicide statute, because the trial court

charged the jury that the only damages recoverable were punitive, and not actual or compensatory. I submit that there is not a trial judge in this state nor an attorney in this state who ever brought or defended, or tried, actions under these two statutes who does not know that this court has held throughout the history of these two statutes, in scores, if not in hundreds, of cases, that the recoverable damages under the two statutes were entirely different. If the action is under the Employers' Liability Act (Code, § 3912), the damages recoverable are purely and solely compensatory and go to the dependents of the deceased; and if it be shown that deceased left no dependents or next of kin, then the damages are merely nominal; and in the absence of proof of earning capacity, expectancy, and what his dependents would probably have received but for his wrongful death, only nominal damages are recoverable. If, however, the action is under the homicide statute (section 2486), then the damages are purely punitive, not actual or compensatory, and evidence to show the latter class is not admissible.

The trial court in this case instructed the jury that the damages recoverable were purely punitive and left to their discretion. Neither party excepted to this part of the charge, thereby conclusively showing that the attorneys for both plaintiff and defendant, and the trial court, treated the count as being under the homicide statute, and not under the Employers' Liability Act.

I submit that under the practice in this state counts under the Employers' Liability Act have become in a number of respects stereotyped, in following the language of the statute, so as to show under which subdivision of the statute the action is brought. Not a one of these stereotyped phrases is to be found in count 4. While the negligence alleged is imputed to the servants in charge or control of an engine, this is purely incidental; and I submit that the thought never entered the mind of the pleader that he was drawing a count under the fifth subdivision of the Employers' Liability Act. The uniform practice in such cases is to allege the name of the agent or servant who was in charge or control of the engine, or to allege that his name is unknown to the pleader, and thus allege directly and specifically that such named person was by the defendant intrusted with such control, and that, while so in charge or control, he was guilty of the negligence complained of. This must be made an issuable fact, as well as the negligence vel non of such person.

[Louisville & Nashville R. R. Co. v. Williams, as Adm.]

If the count could be said to state a cause of action under the Employers' Liability Act, then there is no evidence, and no tendency of any part of the evidence, to support this verdict under such count. There is not a word of evidence showing or tending to show any element of compensatory damages. There were no data from which the jury could possibly have ascertained the amount of damages recoverable. There was no evidence as to the age, habits, earnings, or earning capacity of the deceased, nor as to any other element. Therefore there was not a scintilla of evidence to support a verdict for more than nominal damages. This proposition is self-evident, and the authorities in support of it are too numerous to warrant the attempt to cite them.

Counts under the fifth subdivision of the Employers' Liability Act are not intended to charge, and do not charge, negligence of the master, but negligence of the particular servant in charge of the engine, tram car, etc. They must show that such particular servant was guilty of actionable negligence as to the plaintiff or servant injured; that is, a breach of duty owing by one servant to the other, not a breach of duty owing by the master to the injured servant. The servant in charge of the engine, etc., must be liable to the injured servant, or the master is not liable under this subdivision, thought he might be liable at common law or under other subdivisions of the statute. The only negligence attempted to be alleged in this count was the failure of the engineer to keep a lookout for the deceased. No facts are alleged or attempted to be proven to show any duty resting on the engineer in charge of this train to keep a lookout for the deceased or any other person at the place of the injury. Nothing is alleged or proven to show that this engineer had any reason to suspect that deceased or any other person would be on this bridge. The defendant, or some agent or servant of the defendant, may have been guilty of negligence in failing to notify the engineer that deceased and other servants were working on the bridge, or would be likely to be on or near it, and to be on the lookout for them; yet without such warning or notice to the engineer no duty rested on him to keep a lookout at the time and place of the injury.

It may be true that deceased was not a trespasser, and not a licensee, and had a right to be where he was so far as the defendant was concerned; but it is equally true that, unless the engi-

[Louisville & Nashville R. R. Co. v. Williams, as Adm.]

neer knew of his presence or of the probability of his presence or the presence of some other person on the track at the time and place of the injury, he was under no duty to keep a lookout for deceased on the bridge at the time and place of the injury.

The insufficiency of counts in this respect has been frequently pointed out by this court. A complaint framed under subdivision 5 of the statute, counting upon the negligence of a fellow servant in the charge of an engine, must aver that such engineer knew, or had reason to believe, that the act in question would be likely to injure plaintiff, or that plaintiff was then within the line of danger from such act.—*Louisville & N. R. Co. v. Bouldin*, 110 Ala. 185, 200, 20 South. 325. Otherwise it shows no breach of duty on the part of the defendant.—*Southern Railway Co. v. Goins*, 1 Ala. App. 373, 56 South. 253. Where the negligence or wrong relied upon is alleged to have been that of the engineer in charge of the train, in that he "negligently failed to ring the bell or blow the whistle on said locomotive, or to otherwise give warning that he was ready and about to start said cars,' the count is insufficient in that it fails to show a duty on the part of the engineer to warn intestate that he was ready to move the train. It is also bad in that it alleges in the alternative that the engineer failed to "ring the bell" or "blow the whistle, or to otherwise give warning."—*Lack-Buek Iron Co. v. Holmes*, 164 Ala. 101, 51 South. 236. This would be, clearly, an attempt to charge the engineer with a failure to perform the statutory duties required by section 5473 of the Code of 1907. This section has been held by this court not to apply to cases like the one under consideration.—*Lack-Buek Iron Co. v. Holmes*, 164 Ala. 101, 51 South. 236. See, also, 7 Mayfield's Dig., p. 571.

It is very true that an action will lie against the master for the wrongful death of his servant, under the homicide statute, as well as under the Employers' Liability Act, and that counts may be joined, one declaring under each of the statutes; but if the action is under either subdivision of the Employers' Liability Act, then it cannot be under the homicide statute. An action under each cannot be joined in one count, because the damages recoverable are entirely different.

If the count in this case should be treated as stating a cause of action against the master at common law, it must fail, because the only negligence attempted to be proven was that of a fellow servant in the common employment with the deceased, for which

negligence the master is not liable. In such cases it requires no special plea to raise this issue; it may be raised by the general affirmative charge.—*Chamblee's Case,* 171 Ala. 188, 54 South. 681, Ann. Cas. 1913A, 977; *Mansell's Case,* 138 Ala. 548, 36 South. 459.

The only possible theory upon which there can legally be recovery of substantial damages under count 4 is to treat it as a count under the homicide statute, as counsel for plaintiff and defendant and the trial court treated it. I do not mean to say or intimate that there should be a recovery if the count be good under the statute; but I do say that there cannot lawfully be a recovery of punitive damages under the Employers' Liability Act. If the count be under this act, how can it be said that it was not error for the court to charge the jury, not only that punitive damages were recoverable, but that only such damages could be recovered?

Of course, we would not reverse on this appeal on account of the charges, because appellant requested the court to so charge. This, however, I submit, is conclusive to show that counsel for plaintiff and defendant correctly treated the count as being under the homicide statute, and not under the Employers' Liability Act.

If this case is to become a precedent, then "confusion worse confounded" will necessarily follow. Trial courts and counsel cannot follow it without coming in conflict with every decision of this court heretofore rendered on the subject. If we are not to follow a long line of decisions construing statutes, which have time and time again been readopted, with that construction placed upon them, how can we hope to ever have dependable consistency of decision?