(130 So. 388)

### ALTANTIC COAST LINE R. CO. v. JACKSON.

4 Div. 502.

Supreme Court of Alabama.

Oct. 23, 1930.

---

[1] Ante, p. 16.

647

Sollie & Sollie, of Ozark, for appellee.

A. H. Arrington, of Montgomery, for appellant.

BOULDIN, J.

The action is for damages to plaintiff's truck and load of hay, resulting from a collision with a locomotive of defendant at a road crossing.

Evidence tended to show that the truck "stalled" as it was passing over the railroad crossing, and came to a stop on the crossing.

For some minutes efforts were directed to clearing the crossing, but before this was accomplished a locomotive of defendant drawing a train of cars ran upon and demolished the truck.

Whether this was a public road crossing was an issue submitted to the jury upon evidence of public use for the prescriptive period. No evidence tended to show it was a populous or much-frequented road and crossing. It was no more than a neighborhood road, used by the public as occasion required.

648

The crossing was on a straight track. There was a curve and cut in the direction from which the train approached. The distance from which the enginemen could first see an obstruction at the crossing, as well as the preventive effort used after coming in sight, were in dispute.

Defendant's evidence tended to show that the engineer saw the truck as soon as he rounded the curve to where the crossing came into view, and immediately put on emergency brakes, sanded the track, and did everything a competent engineer could do to bring it to a stop; that the train was well equipped; and that, despite all efforts, the locomotive, running some 30 miles per hour, drawing 22 cars, and on a down grade, ran on over the crossing, colliding with the truck.

There is but one assignment of error. This is directed to a portion of the oral charge of the trial court. That we may consider same in the light of briefs, pro and con, we set out such instruction, with its setting.

The record shows that in course of his oral charge, the court said: "Now, if it was a public road then a certain duty rests upon the railroad company must approach that crossing at such a rate of speed,—it must have its cars properly equipped, and the engine, and then they must approach that crossing with their train so under control as that they may be able to stop that train within the vision of an object at that crossing."

At the close of the charge, the record reads:

"Mr. Arrington: I understood you to say that the train must approach a crossing at a speed which will enable it to stop before reaching an object coming within its vision,—that's what I understood you to say.

"The Court: Well, if I said that, I will eliminate that statement from the jury.

"Judge Sollie approaches the Court with respect to some charge he was about to request given.

"The Court: This is the law, gentlemen:

"'Enginemen may be negligent in approaching crossing at such rate of speed that train could not be stopped in time to avoid injury to traveller at crossing, the crossing is not within Code 1907, No. 5473, as to rate of speed in approaching crossing on curve where engineer cannot see one quarter of mile ahead.'

"The defendant reserves an exception to the above passage read by the Court."

Since East Tenn., Va. & Ga. R. R. Co. v. Deaver, 79 Ala. 216, it has been the declared law of Alabama that, in the absence of statute or ordinance, it is not negligence per se for trainmen to approach and pass a crossing at such speed that an obstruction at the crossing cannot be seen at stopping distance. No rate of speed, reasonably necessary to the purposes of rapid transportation of freight and passengers, and to make connections, amounts to negligence per se. Rothrock v. A. G. S. R. Co., 201 Ala. 308, 78 So. 84.

Our statute requires slowing down only at one class of crossings—a crossing on a curve where the trainmen cannot see at least one-fourth of a mile ahead. Code, §§ 9952 (5473). A crossing of this class is singled out, it would seem, not only because of the inability of the trainmen to see the crossing in time to avoid injury, but also because usually it is more difficult for the traveler to conserve his own safety by observance of due care at such a crossing. Under the evidence and under the instruction in question this class of crossing is not involved.

Singling out this special type of crossing for legislative action implies that a like rule does not obtain as to crossings generally in which the view is obstructed.

Special conditions, such as a populous much-frequented crossing, or other circumstances from which trainmen may reasonably anticipate persons or property will be in an exposed position at the crossing, may raise a common-law duty to reduce speed so as to be able to stop on coming in sight of the crossing. Authorities supra.

In the nature of the case the law does not undertake to define all the circumstances under which such duty may arise.

But the mere fact that the crossing cannot be seen within stopping distance does not impose such a duty. At an ordinary unfrequented crossing, trainmen are not required to anticipate that a truck will stall on a crossing, and no flagman be sent out to warn them, nor that travelers will not or cannot observe the statutory signals and clear the crossing, the trainmen exercising due care after they come in sight of the crossing.

It appears here that those in charge of the truck, busy unloading and seeking to get the truck off the crossing, did not send a flagman in time to signal the train until it emerged from the curve and cut, a point variously given at 600 to 1,200 feet from the crossing. That the train was heard some half mile away is admitted by plaintiff, but it seems an impression prevailed at first that it was going away from the crossing. It is not a question of contributory negligence on the part of plaintiff, but a question of the presence of conditions making it the duty of the trainmen to slow down as declared in the charge of the court in question.

Following our former decisions, we must hold the evidence presented no such conditions.

The instruction under review is in the language of the fourth headnote of Central of Ga. Ry. v. Faust, 17 Ala. App. 96, 82 So. 36. As heretofore indicated, the charge as an abstract proposition of law is correct. As ap-

plied to the facts in the Faust Case, it was not error.

In that case, the court expressly placed its ruling on the ground that the conditions at the crossing were unusual, a kind of trap, which the defendant had contributed to bring about, imposing a special duty of care at the time and place. No such conditions obtained here.

Appellee insists that the charge, as given, was abstract, and not error to reverse. It was prefaced with the statement: "This is the law, Gentlemen." The jury would naturally take this as a statement that this is the law of the case before them; indeed it was their duty so to consider it.

So considered, it said to the jury that, under the evidence in this case, the enginemen *may* have been negligent in approaching the crossing at such a rate of speed that the train could not be stopped in time to avoid injury at the crossing. True, the charge refers to "a traveller" at the crossing, but impliedly made the same rule applicable to the truck. We need not consider whether there is a distinction. Moreover, the charge, in using the word "may," without more, left it to the jury to pass upon both questions of law and fact; to find for themselves whether there was negligence here, unaided by legal principles which should always be given by the court.

The instruction, being directed to the defense mainly relied upon by defendant, cannot be treated as error without injury.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.