21 So.2d 673

### SANDERS v. SOUTHERN RY. CO. et al.

### 6 Div. 235.

Supreme Court of Alabama.

March 8, 1945.

Rehearing Denied April 12, 1945.

Jackson, Rives & Pettus, of Birmingham, for appellant.

Benners, Burr, Stokely & McKamy, of Birmingham, for appellees.

FOSTER, Justice.

The question in this case is whether there was a primary duty on defendant's engineer operating a train of cars in respect to speed or lookout for an employee of another railroad operating a train approaching in the opposite direction and who had been sent forward to flag defendant's train, and was near the end of a trestle around a curve from the approach of defendant's train, and did not clear the trestle. He was on a projecting timber called a bent, which extended twelve or fourteen inches from the end of the crossties, but was hit by defendant's train in passing him.

There was a verdict for defendant. Plaintiff complains of error in giving some charges to the jury for defendant; two of which, S and 11, are as follows:

548

"S. Gentlemen of the jury, I charge that you cannot find a verdict for the plaintiff based on any action or lack of action on the part of engineer Keenum before he actually saw plaintiff's intestate."

"11. Gentlemen of the jury, the court charges you that there was no duty on engineer Keenum to keep a lookout for plaintiff's intestate."

The track was owned by defendant, and operated under its rules. Defendant's train rules 87 and 99 were as follows:

"87. An inferior train must keep out of the way of opposing superior trains and failing to clear the main track by the time required by rule must be protected as prescribed by rule 99."

"99. When a train stops under circumstances in which it may be overtaken by another train, the flagman must go back immediately with flagman's signals a sufficient distance to insure full protection, (not less than one-half mile and further on descending grades or when view is obscured) placing two torpedoes, one rail length apart, on the rail on engineman's side of track, and when necessary, in addition, display a lighted fuse. * * *

"The front of the train must be protected when necessary by the front brakeman or baggageman, if available, otherwise by the fireman."

 The principles of law by which the question is to be determined seem to be fairly well settled. The train of the Gulf, Mobile and Ohio Railroad was going north on the same track on which defendant's train was going south. Plaintiff's intestate was out in front to protect the train of the Gulf, Mobile and Ohio, his employer under rule 99. It was a freight train, No. 58, and defendant's was a passenger train, No. 1, and had superiority over the freight, and was running on orders known to both engineers. It was therefore the duty of the freight train to look out for and be out of the way of the passenger, running pursuant to orders known to both of them, or protect itself under rule 99. At the point where the freight train stopped, there was no passing track, but a switch to a mine. The freight could have waited at Parrish, further down the road at a side track. The passenger train engineer did not know where the freight train was, but knew it was its duty to be out of his way (or protect itself under rule 99), and could assume that duty would be discharged. Central of

Georgia R. Co. v. Martin, 138 Ala. 531, 36 So. 426.

In that case, where the two trains of different companies using the same track collided, it was said: "This fact, in and of itself, imposed a duty of watchfulness and care upon each of said companies toward the other in the conservation of the safety of the trains and employees of the other, and liability upon each for failing to discharge this duty whereby injuries should be inflicted upon the property of the other or upon the persons of the other's employees." But "he (the engineer) was not bound to have and keep his engine so in hand, and running at such rate of speed as at all times to be able to stop it short of collision with another train, which it had no reason to believe was there at all in a position to be collided with." And again: "Everybody knows that all trains upon the same main line are operated to the avoidance of collisions with other trains, by orders and signals given, for the most part by a central and higher authority, directly to trainmen in respect to the movement of their respective trains."

 The general rule is that "in the absence of statute or ordinance a railroad ordinarily owes no duty of keeping a lookout, to give signals of approach or to reduce the speed of trains in anticipation that sectionmen, trackwalkers, flagmen and others employed along the line of track may be found upon the track, such employees being presumed to be familiar with * * * the schedules of trains, * * * (but) the rule does not apply where there are special circumstances (as in Louisville & Nashville R. Co. v. Parker, 223 Ala. 626 [see, Bouldin, J., page 653], 138 So. 231), or when the presence of employees in a particular place should have been anticipated, and particularly in the case of employees engaged in making repairs." 39 Corpus Juris 459, 460, section 576; Louisville & Nashville R. Co. v. Williams, 199 Ala. 453, 74 So. 382. But "no rate of speed, reasonably necessary to the purposes of rapid transportation of freight and passengers, and to make connections, amounts to negligence per se." Atlantic Coast Line R. Co. v. Jackson, 221 Ala. 646, 130 So. 388, 389.

There is no ground for serious contention in this case that defendant's engineer owed the decedent any duty as to speed or signals or lookout, unless there was reason for him to anticipate the presence of decedent in a dangerous position on the

4

track around the curve in the direction in which defendant's train was moving. Charges S and 11, supra, were properly given if the engineer operating defendant's train had no reason to anticipate the presence of decedent in such a dangerous position.

The same train order was given the conductor and engineer of both trains: of the passenger train at Jasper, going south—of the freight at Parrish, going north—in the following language: "No. 1, Motor 41, wait at Jasper until 8:30 A. M., Norvell 8:37 A. M. for train 58, engine 480 and 486." They were ten miles apart. Norvell was one mile or more south of Jasper and eight or nine miles north of Parrish. Calumet is six miles north of Parrish. With reference to those points, there was a passing track only at Jasper, Norvell and Parrish; none at Calumet, but only a switch mine track. Under the circumstances, under the rules of the railroad introduced in evidence, the passenger train No. 1 was first class or superior to the freight, No. 58, which was second class or inferior. The train order meant that No. 1 would wait at Norvell until 8:37 for No. 58 to pass. No. 58 left Parrish at 8:16, which was eight or nine miles from Norvell: it did not reach Norvell but stopped at Calumet, intending to put No. 1 on the Calumet mine switch, the entrance to it being about fifty-five feet from the south end of the trestle. When No. 58 stopped, the decedent was sent forward over the trestle to protect it against No. 1 coming from Norvell. The engineer was of course expecting No. 1 and arranging for it to take the mine switch. He knew that No. 1 must have left Norvell because it was past its waiting time, and knew that he must look out for No. 1, and that under rule 87 must keep out of its way, or if unable to do so must protect itself against No. 1, as he did by sending decedent on with the signal. That was rule 99. So that he was expecting No. 1 to come up at that point. They both knew that No. 1 was not to leave Jasper before 8:30, and that it was not to leave Norvell before 8:37. It in fact left Jasper at 8:30 and Norvell at 8:39. The engineer of No. 1 knew that No. 58 must either remain at Parrish for No. 1 or protect itself under rule 99 at Calumet, as decedent was doing, since there was no other place to pass,

and knew that he was under no duty to No. 58, unless it became necessary to protect itself against No. 1 under that rule. He knew that No. 58 had no passing track between Parrish and Norvell, but he knew also that at Calumet there was a mine switch, and the condition of the track going south to it, including a trestle, six hundred and thirteen feet long, extending near to a cut and curve to the left of the engineer. He went around the curve at the rate of about thirty-five miles per hour, schedule speed, but too fast for decedent to reach the end of the trestle safely. Decedent was engaged in hazardous business made necessary by the circumstances.

It was open for the jury to find from the evidence that defendant's engineer should have anticipated that No. 58 may have left Parrish intending to pass No. 1 at Norvell, or being unable to reach Norvell by the leaving time of 8:37 might have intended to pass at Calumet, the only place between them where a passing was available, and that Calumet did not have a passing side track, but there was only a mine switch, and therefore that flag protection might be necessary, and that a long and dangerous curving trestle was between the two locations, not visible from the approach of No. 1 until dangerously near it.

■■ It was for the jury to say whether these circumstances, if found to exist, were sufficient to impose a duty on the engineer of No. 1 (Keenum) to round that curve at such speed and with such lookout as to be able to take care of a flagman in dangerous position on the trestle who might be protecting No. 58. The giving of the charges S and 11 withdrew those questions from the jury.

Appellee has requested permission to withdraw its motion to dismiss the appeal. It is granted without consideration of the merits of the legal question there presented.

For the error in giving charges S and 11, the judgment is reversed and the cause remanded.

Motion to dismiss the appeal withdrawn. Reversed and remanded.

GARDNER, C. J., and THOMAS, STAKELY, and SIMPSON, JJ., concur.