# Harris *v.* McNamara, *et al.*

*Action for Damages by Mother for Personal Injuries Causing
Death of Minor Son.*

1. *Negligence of fellow-servant good defense to action under § 2588.*
If the death of the minor is caused by the negligence of the infant's
fellow-servant, the employer is not liable in an action brought by a
parent under section 2588 of the Code, (1886).

2. *Mine-owners not liable for wrongful employment of infant by inde-
pendent contractors.*—The wrongful employment of an infant by an
independent contractor, to mine ore for the owners of a mine does not
render the mine-owners liable to the infant's parents for his death.

3. *When the relation of master and servant does not exist.*—An ore-dig-
ger who employs and pays his own assistants, and the details of whose
work are subject to his own exclusive control and management, and
who is paid by the mine-owner a specified sum per car for ore, is not
a servant of the mine-owners.

4. *Contract of infant voidable, not void.*—The contracts of infants are
not void, but merely voidable.

5. *What does not create the relation of master and servant.*—The fact
that, in practice, the ore-diggers would discharge their hands, on
request of the mine-owners, for refusal to observe the rules of the
mines, and that the mine-owners objected to the hiring of a certain
class of assistants by the ore-diggers, does not·show such reservation
of control as creates the relation of master and servant between
them, as will constitute the assistants employed by the ore-diggers
servants of the mine-owners.

APPEAL from City Court of Birmingham.

Tried before Hon. W. W. WILKERSON.

Action by Sarah Harris against McNamara Brothers to
recover damages for the alleged wrongful killing of her son
who was a minor. The opinion states the facts.

LOMAX PITMAN, for appellant, cited 14 Am. & Eng. Ency. of
Law, page 757; *Ib.* 829; *Speed v. Atlantic R. R. Co.* 2 Am. &
Eng. R. R. cases, 77; *Southern Ex. Co. v. Brown,* 7 So. Rept.
318; *Williams v. S. & N. A. R. R. Co.,* 91 Ala. 635.

J. Q. COHEN, for appellee, cited *Godfrey v. Hays,* 6 Ala. 501;
*Lyon v. Bolling et al.,* 4 Ala. 753; *Donegan v. Davis,* 66 Ala.

362; *Scarborough v. Malone*, 67 Ala. 570; *Williams v. Barks-dale*, 58 Ala. 229; *Calhoun v. Hannan, et al.*, 87 Ala. 227; *Mayor & Aldermen of Birmingham v. McCary*, 84 Ala. 461; *Rome & Decatur R. R. Co. v. Chasteen*, 88 Ala. 591; *Scarborough v. Alabama Midland R'y Co.*, 94 Ala. 497, and many other authorities.

HEAD. J.—At common-law no action lies for the wrongful act or omission of a person causing the death of another. Section 2588 of the Code of Alabama provides that when the death of a minor child is caused by the wrongful act, or omission, or negligence of any person or persons, or corporation, his or their servants or agents, the father, or the mother, in case of the death . . . . . . . . the father, or the personal representative of such minor, may sue and recover such damages as the jury may assess. This action is by the mother of the deceased, Willie Harris, (the father being dead), and is founded upon that statute. The particular act complained of is the negligent and wrongful employment, by the appellees, of appellant's minor son, Willie Harris, in a hazardous and dangerous business, without appellant's consent and against her will, resulting in the son's death. The third count of the complaint was stricken out by amendment, and the case was tried upon issue joined on pleas to the first and second counts. The first count, in addition to the cause of action above mentioned, also alleges that the death was caused by the negligence of appellees' servants in operating a tram-car used in the business in which deceased was employed, whereby the car ran over deceased and killed him. This car, as the allegation is, was being used by appellees in their ore-mines for carrying the ore out of the mines, the same being drawn into the mines by mules and when loaded allowed to descend therefrom by force of gravity. Deceased's duties were to go ahead of the car, so descending, for the purpose of turning the switch when necessary, and signalling to the other servants in charge of the car to allow it to run out of the mines, and was killed whilst in the performance of these duties, by and through the negligence of the servants operating it. We think these allegations give no cause of action. The negligence charged is but that of fellow-servants. It matters not what the age of deceased was, or how wrongful his employment by reason of his age. The relation of master and servant existing by virtue of the employment, the rule as to employer's liability for negligence of fellow-servants is the same as in case of injuries to adults similarly produced.

*King v. Boston R. R. Co.*, 9 Cush. 112; *Curran v. Manf'g. Co.*, 130 Mass. 374; *Fones v. Phillips*, 39 Ark. 17; *Fisk v. Cen. Pac. R. R. Co.*, 72 Cal. 38; *North Chicago Rolling Mills Co, v. Benson*, 18 Ill. App. 194; *Brown v. Maxwell*, 6 Hill, 592. Mr. Beach, in his work on contributory negligence, sec. 357, criticises the doctrine of these cases, on the ground, as he states the rule, that minors having no power to make a contract, they are not bound by their express contracts with their employers, and hence no implied contract to assume the risks of injury from negligence of fellow-servants can arise. But minors' contracts are not void. They are voidable merely, and we think a plaintiff, whether the minor himself or another, by suing for an injury caused by some specific negligence committed in the course of the business, apart from the fact of employment itself, necessarily adopts for the purposes of the action, the minor's voidable contract of employment, and subjects himself to the same rules which govern in actions by or in right of adult employees. Original wrongful employment of a minor in a dangerous service, furnishes, under proper allegations, a different and independent cause of action. In cases under our statute known as the Employer's Liability Act, which renders actionable against the employer, the negligence of fellow-servants in certain specified cases, the age of the injured party might be material in evidence, to give character to the act of the servant charged as negligent, or exert an influence upon the question of contributory negligence, when that defense is interposed. The allegations of the present complaint, expressly made, or which could be supplied by reasonable intendment, do not make a case under that statute. Nor does it matter that the parent sues instead of the injured party in case of injury merely, or the personal representative in case of death. The basis of the action is the wrong done the injured party, and the right to redress that wrong which the statute confers upon the parent, in case of death, is not more enlarged than that which would belong to the deceased himself, if death had not resulted, and he were suing for the personal injury.—Beach Con. Neg. § 132 and cases there cited.

This leaves the appellant's case to rest alone, as stated in the outset of this opinion, upon the charge of wrongful employment, meagerly set forth in the first, but more specifically in the second count of the complaint.

The question of prime importance is whether there is evidence tending to show that deceased was employed by appellees. Their contention is that he was employed by, and

[Harris v. McNamara, et al.]

was alone the servant of one Dock Walton, who was an independent contractor, engaged in digging ore in their mines and delivering it upon cars furnished by them in the mines at a fixed price per car. The bill of exceptions contains all the evidence on the subject, which is short and substantially as follows: "On the part of plaintiff, that deceased was employed to work at the Eureka Mines which were being operated by the defendants; that he was working under Dock Walton, a negro; that Walton hired him at $1.50 per day. That deceased's duties were to act as collier for cars of Dock Walton. These duties required that he go in front of tram-cars loaded with iron-ore about to descend out of said mines and turn the switches and call the cars. Dock Walton testified for plaintiff: "Last January I was working in the mines at Eureka for myself, I suppose. Mr. McNamara paid me. Willie Harris was working under me when he was killed. I turned in the time of Harris and his name the day he was killed that they might know whom to pay the money to. Mr. Dave McNamara was our superintendent, and his business was to keep everything straight in the yards. He had no right to discharge employees there in the mines. I hired Harris. I had no authority from McNamara Bros. to hire him. I had four or five people to help me. I got them to help me whenever I wanted to and I had a right to do so. I paid my men what I thought they were worth." On behalf of defendants, W. F. McNamara, one of the defendants, testified that their system of mining ore was that they employed only the tram-car drivers, a man who had charge of the tracks and a locomotive engineer. They had also a superintendent, whose duty it was to look after the drivers, track-layers and engineer, to furnish the ore-diggers with enough timbers, rails, &c., and see that they got out enough ore. All their iron was mined under contracts. One Dock Walton was working for them under the following arrangements, which were the same as were had with six or seven hundred other ore-diggers, viz: They, McNamara Bros., furnished the cars and mules and hired drivers to drive the mules with cars attached up into the mines to the ore-diggers who would load them with ore. They paid the ore-diggers $1.10 per car; and their contracts were not for any specified time. These men, the ore-diggers, all hired their own assistants to be paid out of the ore-diggers' earnings, and the names and time of the assistants were turned into the office every night for the purpose of identifying the assistants to be paid out of such earnings. McNamara Bros. would pay these assistants and deduct the total amount from the aggregate

amount which would be coming to the ore-diggers for the iron mined by them. The men were mostly colored and these steps were taken to protect the mines from the possibility of falling into bad repute. The ore-diggers had to buy from McNamara Bros. their own blasting powder, tools, &c., in fact everything except mules and cars, &c. Witness testified that they had no boy in their employ by the name of Willie Harris. He saw the boy when he was killed but did not know how long he had been working there; that said Willie Harris was not hired by any one authorized by them and no one had their authority to contract for labor except the superintendent and he was only authorized to hire men to do company work; that the superintendent had no authority to say where ore should be gotten from or how it should be gotten out. Witness stated that he did not know that they would have the right themselves to discharge the assistants or any of their men, but if a man went to work at their mines and did not or would not go according to their rules and regulations they would tell his employer to discharge him, and it would be done. Witness, assisted by the book-keeper, was paymaster and paid off the men and their assistants.

F. J. McNamara, the other defendant, testified that neither he nor any one authorized by him to hire men, employed the deceased. On cross-examination he stated that "defendants had a right to object to the hiring of any one by the ore-diggers. There were certain assistants to whose hiring we objected."

We have carefully considered this testimony, and are of opinion that no legitimate inference can be drawn from it that deceased was, in any sense, the servant of appellees. Dock Walton's engagement was to get ore in the mines and deliver it upon cars furnished by appellees at $1.10 per car. He was to furnish his own labor, tools and other appliances for executing the engagement, and the means and details of its execution were subject to his own exclusive control and management. He was to select and employ his own assistants, an many as he chose, and pay them such wages as he saw fit to agree to pay. With these means appellees had no concern, and over them reserved no authority or control. They could not employ laborers for Walton or dictate how many or whom he should employ; nor is there any evidence tending to show that they had the right to discharge any laborer employed by him. We do not think the testimony of W. F. McNamara to the effect that in practice, the employers would discharge their hands, on his request, for

[Harris v. McNamara, et al.]

refusal to observe the rules and regulations of the mines, tends to show power or authority in him to enforce his requests for such discharge. The fact that the discharge was accomplished by and through requests to the employer, instead of by the direct act of appellees, rather repels than creates the inference that appellees themselves possessed the right to discharge. Nor do we think the testimony of F. J. McNamara that defendants had a right to object to the hiring of any one by the ore-diggers and that they did object to the hiring of certain assistants, tends to show such reservation of control over the execution of Walton's engagement by appellees as created between them and his employees the relation of master and servant. It appears the mines were conducted generally under certain rules and regulations presumably prescribed by the appellees. What these rules were the evidence does not tend to show. The right to object to the employment of one who it might be thought would not conform to the general rules of the mines does not tend to show a right to employ others in his place, or discharge others when employed, or to exercise any direction or control over their work.—*Cuff v. N. & N. Y. R. R. Co.*, 35 N. J. Law 17; Wood Master & Servant, p. 619. No presumptions in favor of appellant, upon the question of employment, not arising from the evidence, can be indulged, for the burden of proof is upon her to prove the employment. The effect of the whole evidence is that appellees were concerned only in the result of Walton's engagement, viz., the delivery of a proper quantity of ore at the place stipulated. They had no control over the *means* and *agencies* by which that result was to be produced. Those pertained to Walton alone and over them he was exclusive master. Wood Master & Serv., p. 618, *et seq.*; 14 Am. & Eng. Encyc. of Law, 829; *Speed v. Atlantic R. R. Co.*, 2 Am. & Eng. R. R. Cases 77; *Southern Express Co. v. Brown*, 7 So. Rep. 318; *Mayor, &c. v. McCrary*, 84 Ala. 469; *R. & D. R. R. Co. v. Chasteen*, 88 Ala. 591; *Scarborough v. Ala. Mid. R. R. Co.*, 94 Ala. 497.

In determining whether the relation of master and servant exists or not, it is not, necessarily, of controlling importance that the laborer is paid for his service so much per given quantity of work done instead of wages for the time employed. The former method of compensation might be adopted, and yet such control and direction over the execution of the work by him for whom it is being done might be reserved as to create the relation of master and servant, as in the case of *Tenn. C. I. & R. R. Co. v. Hayes, post.*

[Richmond & Danville R. R. Co. v. Hissong.]

The conclusion is that the deceased was not employed by appellees, as alleged, and the action consequently fails.  The general affirmative charge for appellees, if requested, could have been properly given.  It is, therefore, unnecessary to consider the special charges given and refused to which exceptions were reserved.

The judgment of the City Court is affirmed.