# Dallas Manfg. Co., *v.* Townes.

*Action for Damages for Injury to An Employe.*

(Decided July 6th, 1906.    41 So. Rep. 988.)

1. *Master and Servant; Injuries to Servant; Relation of Parties; Servant Under Control of Contractor.*—Defendant hired plaintiff and put him to work under the control of a contractor engaged in setting machinery in defendant mill.    Defendant paid plaintiff and charged his wages to the contractor under the contract binding the contractor to pay all expenses of putting in machiery; Held, plaintiff could not recover of defendant, as his servant, for injuries received on account of insufficient lighting of the mill.

2. *Negligence; Condition of Building; Care as to Licensee.*—The mill proprietor owes it to the servant of an independent contractor who is placing machinery in the mill, to keep the mill premises in a reasonably safe condition.

APPEAL from Madison Circuit Court.

Heard before HON. D. W. SPEAKE.

This was an action for damages by Charles F. Townes against the Dallas Mfg. Co., for personal injuries sustained while in the employment of a contractor in the employment of plaintiff.    The pleadings and the facts are sufficiently stated in the opinion.

[Dallas Manufacturing Co. v. Townes.]

COOPER & FOSTER, for appellant.

R. C. BRICKELL, S. S. PLEASANT, and ERLE PETTUS, for appellee.

SIMPSON, J.—This action was brought by the appellee (plaintiff) against the appellant (defendant) to recover damages for an injury received by the plaintiff as an employe of defendant, while said plaintiff was engaged in the duties of his employment working in the cotton mill of defendant. The complaint originally contained four counts, but the second count was eliminated by demurrer, and the court gave the general charge in favor of the defendant as to the first count. The third count, which is copied in the statement of the case, alleges that injury, which resulted from plaintiff's hand being "caught between the clothing of the cylinders and the clothing of the slats of the carding machines," was caused by a defect in the condition of the ways, works, etc., in the carding room, in which plaintiff was working, was lighted by electric lights, electricity being generated upon the premises, and said electric appliances had become defective in some way unknown to this plaintiff, that they were totally insufficient to give proper light for the servants of defendant to discharge their duties after dark, and at the time of the injury complained of, it was dark and said lights had gone out"—and then makes the statutory averments in regard to the person inintrusted, etc. This count alleges that plaintiff was employed by defendant as a helper to aid in placing new carding machines. The fourth count alleges that he was employed "as a helper or assistant to those in charge of the setting up and preparing said carding machines," and that, while so engaged, he "attempted to pass between or around said carding machines, but stumbled over an obstacle which had been placed in the way between said machines by some person other than plaintiff," and thus caught his hand, and that he could not see the obstacle because of the failure of the defendant to furnish proper and sufficient lights in said cardroom, and that said lights had been out of order and in

bad condition for some time, which fact had been made known to defendant or to its agents, and entrusted with the supervision of its light machinery, and, although the defective condition of said lights was known to plaintiff, the defendant, through its agents, had been engaged in attempting to remedy said defect, and representing to plaintiff and its employes that said defects had been remedied.

It is shown, and not controverted: That an independent company, called the "Saco-Pattee Company," had entered into a contract selling certain machinery to defendants and agreeing "to furnish men to erect, clothe, and start" the machinery, and were engaged in that work, and plaintiff was employed by defendant as a helper to aid them, and placed under the orders of one Jackson, who was foreman in charge of the work under said Saco-Pattee Company. Defendant paid the wages of plaintiff, but charged it against said Pattee Company. That the obstacle over which plaintiff stumbled and fell was a door of a carding machine, which was lying on the floor. That just as plaintiff's foot came in contact with this door the lights went out and that whirled him around. That he grabbed at one of the standards on the side of the machine to break his fall, but missed it, and thus fell against one of the machines which had been put in motion by the Pattee Company people in setting up and testing the machinery. Plaintiff had not noticed this door there before. A little before this time the lights had "died down and then flared up." The plaintiff (who was the only witness to the accident) testified, also, that there had been trouble with the lights for some time prior to the injury; sometimes they would have trouble each day, and sometimes they would be all right for a week; that he had heard orders given to the electrician about the lights, and there had been numerous efforts made by Mr. Wise, the electrician, to remedy the lights; that he had seen them working on them some 10 or 15 times during the five months he worked there; that after said work said lights seemed to be all right; that the repairs were made on Friday or Saturday, and Mr. Wise assured them the lights were all right, and the accident occurred on the following

Monday or Tuesday. It was in proof, also, that Mr. Vaughn, the cardroom boss, had been heard to complain to Mr. Massey, the superintendent of the electric plant, and that shortly thereafter the witness would see Wise and his assistants at work on them.

The witness Anglin testified that in his opinion the dying down and flaring up of the lights was owing to defective globes; that they had done so twice that day, and that he had seen Wise putting new globes on and putting new lights in that morning; also that White, boss of spinning room, had complained of the lights to Mr. Massey, superintendent; that at one time witness was sent by White to Massey to ask him to turn on the lights, and he replied that he would, and that there would be good lights before witness got back there.

The witness Massy, who was superintendent of defendant's company, testified that Wise, the electrician, was a competent electrician of seven or eight years experience; that the electric lighting apparatus was new and in perfect condition; that, when witness went into carding room a few minutes after the accident, the electric light was burning brightly, and he had no knowledge of the light having gone out; that several weeks before that there had been a request for more lights, and he had had them put in before the accident; that the only two causes which could make all the lights go out were, first, the burning out of the generator, which it would require four or five minutes to repair, or by cutting a wire or pulling out a switch, and, if all of them did go out and flash up, it must have been from throwing out a switch and immediately throwing it back on the main line. Witness explained the working of the lighting system, and stated that he had seen the lights go out probably 3 or 4 times, in 5 or 7 years from the burning out of a fuse or a globe becoming defective, and could not tell how long a fuse would last, as they varied, sometimes lasting much longer than at others. Several witnesses who were working in the same room at the time the accident occurred stated that the lights did not go out at that time.

Wise, the electrician, testified that he had been in that business 10 or 11 years, was in the employ of the defendant, remembered the time of the accident; that he was in the dynamo room at that time; that at that time the lighting plant was in good condition, and no defects whatever in any part of the machine, and that the wires were in good condition; that he had never known all the lights to go out except when a fuse would blow out; that nothing but that, or shutting down the machine, would cause all the lights to go out, and neither occurred that evening; that the only way to cause the lights of one room to go out without affecting the others would be by pulling out the switch which connected that room with the dynamo; that while it was impossible to say that every globe was in perfect condition (as if air should get in one it would destroy the carbon), yet the entire plant wires, globes, etc., were in first class condition; that the mill was so constructed that there were eight lights on a circuit, and if the fuse of one circuit should blow out the eight lights would be extinguished, and if only one light went out it would indicate that the globe had become defective. Witness also testified on cross-examination that there were two generators connected together; that if one had gotten out of order all the lights would have been extinguished; that generators generally are subject to various defects which affect the lights; that, if a piece of metal should come in contact with the wire, it would burn that wire in two and all lights supplied by that wire would go out; that some time prior to the accident the system of wires in the cardroom had been changed, but this change did not cause any trouble; also that he had never received any complaints in regard to the lights in that room except some days they would need lights earlier than others, and he put some new lights in this room three or four weeks before the accident; also that if a metal had come in contact with the wires, so as to cause the lights in that room to go out, they would have stayed out until the wire was repaired; also that if the engine was improperly regulated that would cause the lights to flash up and down.

There was also testimony by several witnesses contradicting plaintiff about the lights going out, also relating contradictory accounts of the accident given by plaintiff as to how the accident occurred, and also explaining that it was impossible for the accident to have occurred in the manner related by plaintiff.. A practical electrician of the Bell Telephone Company gave about the same explanation of the working of an electric plant as that given by Wise..

The third count is based on subdivision 1 of section 1749 of the Code of Alabama 1896.

The fourth count alleges that plaintiff was an employe of the defendant, but does not make the proper allegations to bring the case within either of the subdivisions of said section 1749; but, on the contrary, alleges that plaintiff stumbled and fell "because of the failure of the defendant to furnish proper and sufficient light in said cardroom." The subsequent part of this count, besides being elliptical, in place of charging that the supposed defects "arose from or had not been discovered or remedied owing to the neglect of the master," etc., according to the statute, alleges that the defendant, through its agents, had been engaged in attempting to remedy said defects.

The first matter which it seems necessary to ascertain, in order to arrive at a solution of this case, is what was the relation, if any, between the plaintiff and the defendant? Was the plaintiff an employe of the defendant? The evidence shows that the plaintiff was not a regular employe of defendant, but had been several times employed for the same kind of work as in this, and that in this case he was working under an independent contractor, subject to his orders or to the orders of his superintendent only, who was not in any way subject to the orders or direction of the defendant. While it is true the evidence shows that the defendant employed the plaintiff, yet he immediately turned him over to Jackson, the superintendent of the independent contractor, and, although defendant paid the wages of plaintiff, he charged the same up to said independent contractor, whose contract bound him to pay all the expenses of setting up the machinery. Where certain

work is let to an independent contractor, who works according to his own methods and not under the direction of the master, those who work under said independent contractor are his servants, and not the servants or employes of the master. And this principle applies even to one who is the general servant of the master, but for that particular work becomes the servant of the contractor.—*Powell v. Construction Co.,* 88 Tenn. 692, 13 S. W. 691, 17 Am. St. Rep. 925, 929-931; Dresser's Employer's Liability, § 9, p. 59; 2 Labatt's Master and Servant, § 623, p. 1822, 1823, §§ 720, 7219, pp. 2054-2055; 2 Bailey Personal Injuries Relating to Master and Servant, §§ 2585, 2586, p. 861; *Rome & Decatur R. R. v. Chasteen,* 88 Ala. 591, 593, 594, 7 South. 94; *Scarbrough v. Ala. Mid. R. R.,* 94 Ala. 497, 500, 10 South. 316; *Dean v. E. T. Va. & Ga. & L. & N. R. R.,* 98 Ala. 586, 589, 13 South. 489. In such case there would be a liability on the part of the contractor, outside the contract, to have his premises in reasonably safe condition, but these counts are not based on that liability.—Wood's Master and Servant (2d Ed.) § 337, pp. 699-70; 2 Bailey's Personal Injuries, relating to master and servant, § 2594, p. 865; Dresser's Employer's Liability, § 9, p. 59. Both of the counts rested upon allegations charging that the plaintiff was an employe of defendant, and from what has been said it results that the plaintiff could not recover under those counts. Consequently the court erred in giving charge (C) requested by the plaintiff, and in refusing the general charge requested by the defendant.

The judgment of the court is reversed, and the cause remanded.

WEAKLEY, C. J., and TYSON and ANDERSON, JJ., concur.