(94 South. 540)

## UNITED STATES CAST IRON PIPE & FOUNDRY CO. v. CALDWELL et al.
(6 Div. 505.)

(Supreme Court of Alabama.   Oct. 12, 1922.)

**1. Master and servant ⊚═264(1)—Proof of relation essential.**

The plaintiff in an action for the death of a laborer cannot recover on a complaint under Employers' Liability Act, §§ 1, 2, for negligence causing injury, unless it is shown intestate was an employee of defendant in the prosecution of the work.

**2. Evidence ⊚═244(2)—Declaration of servant in undertaking beyond scope of employment not binding on employer.**

Where, in an action for death of a miner, the evidence showed without dispute that an agent of the defendant corporation was employed merely in its work of prospecting and testing for coal, and that his duty was to supervise the drilling and some surveying being done for the company, but had no authority to open or operate a coal mine for the company, an undertaking which was entirely beyond the scope of his employment, his declaration that he was having the work done for the defendant corporation did not tend to show that the work was being done by the authority of the company or with its knowledge or consent.

**3. Principal and agent ⊚═21—Parol agency may be established by testimony of agent against principal.**

Where a parol agency is involved, the fact and extent of the agency may be established by the testimony of the agent.

**4. Evidence ⊚═244(2)—With other evidence of agency, acts and declarations of agent admissible.**

Where there is enough testimony to support a finding of the existence of the agency, the acts or declarations of the agent are admissible in evidence against the principal; but the act or declaration must ·be explanatory of, and part of, some act or transaction within the scope of his authority which the agent is at the time engaged in performing for his principal.

**5. Master and servant ⊚═316(1)—Coal mine operator held an independent contractor.**

One employed to open and operate a coal mine, under an arrangement by which he was to be assisted with his pay roll and supplied with timbers a car for the coal mined and sold by him, held an independent contractor for whose negligence his employer exercising no control over the work was not responsible to the men employed.

Appeal from Circuit Court, Jefferson County; J. C. B. Gwin, Judge.

Action by H. C. Caldwell and Fannie Caldwell against the United States Cast Iron Pipe & Foundry Company and others for damages. From a judgment for plaintiff, the named defendant appeals. Reversed and remanded.

Plaintiffs sue for damages for the death of their intestate through the negligence of defendants. The action was originally against one Hugh Friel, but by amendment the United States Cast Iron Pipe & Foundry Company and the Kirkpatrick Drilling Company were made joint defendants with Friel.

The case was tried on counts 5 and 11 of the complaint. Count 5 alleges that—

"Defendants were engaged in opening a coal mine entry, * * * and the plaintiffs' said intestate, Jesse Mayhan, was then and there an employee of the defendants working for the defendants under the duties of his said employment as a laborer in said business, and, while * * * then and there engaged in the line and scope of his employment, a part of the roof of said entry fell upon and killed him."

The charge of negligence follows the language of subdivision 1 of the Employers' Liability Act (Laws 1919, p. 206) with the specification that. "said defect consisted of a defective condition of the roof of said entry at the said point."

Count 11 is substantially the same as count 5 in its allegations of the place and manner of intestate's employment, but is framed under subdivision 2 of the act, and imputes intestate's death to the negligence of Nick Geis, defendant's superintendent. It charges "that whilst in ·the exercise of such superintendence the said Nick Geis negligently failed to have the roof of said mine entry timbered at the point" of the accident.

Hezzie Parsons, witness for plaintiff, testified that he was working with the deceased at the time of his injury; that the roof of the mine had been propped or timbered; that they were preparing to take out the middle man in order to get the coal beneath it, and, for such purpose, had taken down the timbers; Nick Geis had ordered it; that he examined the roof carefully, testing it with a pick handle; that he did not find any part of it which seemed to be loose or unsafe; that he was a miner of 15 years' experience, and examined the roof in the usual method.

Charley McFall, witness for plaintiff, testified that he was working with deceased, and that they were opening a coal mine; that they had excavated about 10 feet under the hill when the rock fell from the outer edge of the excavation; that the roof of the mine was not timbered, and consisted of rock and fine clay. This witness testified further:

---

⊚═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"The work in which he was engaged was under the direction and control of Nick Geis. I couldn't say who he was working under. I know Hugh Friel. I saw Friel in conversation with Nick Geis. I cannot say where the money came from with which we were paid. Our wages were paid to us by Nick Geis. On pay day Hugh Friel would come to the place where we worked and would give Nick Geis money, and then Geis would pay us off."

In answer to statutory interrogatories propounded by plaintiff to defendant Hugh Friel, the witness answered, in part, as follows:

"I did not cause the mine openings to be made, but I authorized it to be done at the place where Nick Geis opened the same. I was representing the estate of ———— Ewing in attempting to sell the mineral interest in said land, and under an agreement with S. E. Ewing, one of the owners, I had interested United States Cast Iron Pipe & Foundry Company in said land, and it took the option in evidence at my solicitation. The Kirkpatrick Drilling Company was in need of coal to run its drills, and I told Nick Geis that he could make some money by getting out coal on the land for it; and I authorized him to make the entry, and agreed with him that he could sell the coal to it and other parties who wanted coal while digging the coal and opening up the mine entry. I had not consulted with any one about this arrangement, but made it on the idea that it was to the interest of the owners of the land, and I did it to show up the coal therein in my effort to effect the sale of said land. Coal was bringing a good price at that time, and Nick Geis was anxious to get the right to mine the coal for sale to said Kirkpatrick Drilling Company and others. In this matter I acted solely on my own responsibility and without the direct authority from any person or corporation or partnership, and I was not then interested in United States Cast Iron Pipe & Foundry Company, or the Kirkpatrick Drilling Company. I did not make the arrangement as an employee of any person, firm, or corporation, or with authority from any person, firm, or corporation. S. E. Ewing authorized me to make the tests for coal."

His answer stated also that he was "in the employ of United States Cast Iron Pipe & Foundry Company on the 15th day of November, 1918, testing for coal on section 7 (where the mine in question was opened)," and, further:

"I did not have, and was not to have, any control over the manner of opening up said drift, and had nothing to do with the employment of help, or in paying for same, except I loaned Mr. Geis $50 to be paid back when the coal was dry for shipment."

Friel's answers, including the above, were put in evidence by plaintiff.

Plaintiffs introduced as a witness T. J. Early, who testified that he was working for the Kirkpatrick Drilling Company; that in November, 1917, he went with Friel to the place where the plaintiffs' intestate was working at the time of his injury; that he saw Friel talking to Geis about the work and heard a part of the conversation. Geis told Friel that he needed a car for the coal, and asked Friel if he could not get a car for him. Friel stated that he would see if he could get him a car.

Plaintiffs asked the witness this question:

"Did Mr. Friel say at that time for whom he was having the work done at that place, and, if so, for whom?"

The appellant objected to this question on the ground that it called for immaterial, irrelevant, and incompetent testimony, and that said declaration was not in the scope of the agency of Hugh Friel which was shown by the testimony to exist at the time the declaration was made. The court overruled the objection, and the witness answered:

"Mr. Friel said that he was having the work done for the United States Cast Iron Pipe & Foundry Company."

Motion to exclude the answer on the same grounds was overruled, and defendant duly excepted to both rulings.

Ed Parsons, a witness offered in behalf of defendant Friel, testified that he lived about a mile from where Jesse Mayhan was injured, and he knew Nick Geis, who boarded with the witness while the work was being done. The witness bought some of the coal that was mined, and he bought it from Geis, agreed with Geis as to the price, and paid Geis for the coal.

Vincent Ferguson, a witness offered by the appellant, testified that he was resident manager of the appellant at Bessemer during the entire year 1917, and had held that position for 19 years; that appellant had at Bessemer a plant for the manufacture of pipe and other castings; that witness had the entire control of this plant, subject to the direction of the company's officers; the company had its principal office in New Jersey, and had a president, one or more vice presidents, a secretary and treasurer, and a board of directors. George J. Long, of Louisville, Ky., was one of the vice presidents. The company used coal to manufacture coke for use in its foundry, but did not have a coal mine, never did have one, did not operate a coal mine, or have anything to do with coal mining; that witness was instructed by Mr. Long, vice president of appellant, to investigate the matter of purchasing coal land; that Hugh Friel was the agent of certain nonresidents who owned section 7 near Bessemer. Through Mr. Friel, the witness secured an option on the said section 7. The witness was the only representative of the appellant who had any connection with securing this option or with what was done on the lands after the option was secured; that he was acting under the instructions of Mr. Long, the vice president, who was the only officer of the company who gave witness any instructions or authorized anything in connection with the matter. The instructions

were verbal and were to secure the option, make a contract for the drilling of a hole to ascertain the extent of the coal deposits, to have the lands surveyed, and the location for a railroad surveyed: He entered into a contract with the Kirkpatrick Drilling Company to drill on the lands. This contract is evidenced by letter set out in the record. The drilling company drilled the hole, and that was the only prospecting done by the appellant on the land. Witness did not employ, nor authorize Friel to employ, Jesse Mayhan (the deceased), or Nick Geis, or any of the others, to work where the injury occurred. He did not authorize Friel to employ anybody. He was not authorized by the appellant to have any work done at that place. He did not furnish the money for the pay roll, and did not furnish Friel with money to pay any one. He had no control over the work, and it was not being done by him, and he did not authorize it to be done by anyone. He did not know of any arrangement with Geis by Friel. He did not receive any samples of coal sent from that place to his office. No one said anything to the witness about samples being brought in, and he did not know about it. He had made requests for samples from the drill hole. Mr. Friel received his instructions and authority from the witness and from no one else connected with the appellant. Witness did not know Geis, did not buy any coal from the opening, did not receive any money from the sale of coal at this place, and did not know anything about it and did not exercise any control over the men working there.

Knox, Acker, Sterne & Liles, of Anniston, for appellant.

Under the averments of plaintiff's complaint, a recovery must be had against all or against none. 17 Ala. App. 22, 81 South. 358; 152 Ala. 646, 44 South. 957; 138 Ala. 548, 36 South. 459; 111 Ala. 597, 20 South. 391; 98 Ala. 586, 13 South. 489; 17 Ala. App. 320, 85 South. 859. Evidence of the agent's statement or admission is not admissible against his principal, for the purpose of establishing, enlarging, or renewing his authority. 147 Ala. 615, 41 South. 663; 152 Ala. 166, 44 South. 627, 12 L. R. A. (N. S.) 389; 196 Ala. 365, 72 South. 34; 107 Ala. 640, 18 South. 266; 16 Ala. App. 270, 77 South. 420; 202 Ala. 649, 81 South. 592.

Goodwyn & Ross, of Bessemer, for appellee.

Where the fact of agency rests in parol, or is to be inferred from the conduct of the principal, and there is evidence tending to show the agency, the agent's acts or declaration are admissible in evidence. 198 Ala. 290, 73 South. 502. Any number of defendants may be joined in an action of this kind, and judgment may be rendered against the one whom the evidence may show to be lia-

ble. 201 Ala. 128, 77 South. 552; 162 Ala. 570, 50 South. 293; Acts 1915, p. 605; 202 Ala. 62, 79 South. 456; 12 Ala. App. 541, 68 South. 476. Proof as to defendant's liability being in conflict, the affirmative charge was properly refused. 115 Ala. 461, 22 South. 80; 59 Ala. 164, 31 Am. Rep. 13; 188 Ala. 262, 66 South. 95.

SOMERVILLE, J. Conceding, without deciding, that the evidence is sufficient to support a finding by the jury that the defendant Friel was personally interested in having the coal mine opened and operated for experimental purposes, and that he not only authorized the miner Geis to do so, but actually employed him for that purpose, nevertheless plaintiff's case against the appellant corporation must be held to be without support in the evidence.

[1] Under the allegations of the complaint, plaintiffs could not recover unless they showed that the intestate was an employee of appellant corporation in the prosecution of the work of opening the mine. Harris v. McNamara, 97 Ala. 181, 187, 12 South. 103; Dallas Mfg. Co. v. Townes, 148 Ala. 146, 152, 41 South. 988.

The only evidence which tends in the remotest degree to connect the appellant corporation with the opening and operation of the mine—which was, according to all the witnesses, including plaintiffs', "under the direction and control of Nick Geis"—is the testimony of witness Early that on one occasion, when he was at the mine with Friel, Friel told him that "he was having the work done for the United States Cast Iron Pipe & Foundry Company."

[2] But the evidence shows without dispute that Friel was employed by that company merely in its work of prospecting and testing for coal, and that his duty was to supervise the drilling and some surveying being done for the company. He had no authority to open or operate a coal mine for the company—an undertaking which was clearly beyond the scope of his employment. Hence his declaration, if made as claimed, did not tend to show that the work was being done by the authority of the company, or with its knowledge or consent. Oden-Elliott Lbr. Co. v. Rowe, 201 Ala. 128, 129, 77 South. 552.

[3, 4] It must be observed, however, that the statement in question was hearsay merely, and was improperly admitted in evidence.

The rule is, of course, well settled that where a parol agency is involved, the fact and extent of the agency may be established by the testimony of the agent; and that, where there is enough testimony to support a finding of the existence of the agency, the acts or declarations of the agent are admissible in evidence against the principal. Roberts v. Williams, 198 Ala. 290, 73 South. 502.

But, as to the latter proposition, there is an important limitation, viz. the act or dec-

laration must be explanatory of, and part of, some act or transaction, within the scope of his authority, which the agent is at the time engaged in performing for his principal. Union Naval Stores Co. v. Pugh, 156 Ala. 369, 374, 47 South. 48, and cases therein cited; 2 Corp. Jur. 939, § 695.

The undisputed evidence shows that Friel was an agent of appellant corporation, but the same evidence shows also that his authority did not extend to the opening or operation of mines, and that he was wholly without authority as to the opening or operation of this particular mine.

Again, the statement imputed to Friel was, under the circumstances, nothing but hearsay evidence. It was not made in the course of, or as a part of, the operation of the mine. On the contrary, it was made objectively, as a matter of information to a stranger.

[5] But, if it were conceded that Friel was authorized by appellant corporation to have the mine opened and operated, and that, acting under that authority, he made the arrangement which he says he made with Geis, or even employed Geis to do the work, assisted him with his pay roll, supplied him with timbers, and promised to secure a car for the coal being mined; yet under the evidence it cannot be doubted, as a clear legal conclusion, that Geis stood in the position of an independent contractor, for whose negligence in the conduct of his undertaking his employer was not responsible to the man employed by Geis, even if the complaint were framed to cover such a case. Harris v. McNamara, 97 Ala. 181, 12 South. 103; Dallas Mfg. Co. v. Townes, 148 Ala. 146, 41 South. 988; Porter v. T. C. I. & Ry. Co., 177 Ala. 406, 59 South. 255; Scoggins v. Atlantic, etc., Co., 179 Ala. 213, 60 South. 175; Connors-Weyman Steel Co. v. Kilgore, 189 Ala. 643, 645, 66 South. 609.

For the reasons above set forth, the general affirmative charge should have been given for appellant [defendant] as requested, and its refusal was error which must reverse the judgment.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes