## BIRMINGHAM POST CO. v. STURGEON.

### 6 Div. 349.

Supreme Court of Alabama.

June 1, 1933.

Rehearing Denied June 22, 1933.

W. H. Sadler, Jr., and Grady W. Patterson, both of Birmingham, for appellant.

Chas. W. Greer and Thos. Seay, both of Birmingham, for appellee.

GARDNER, Justice.

The sole question here for determination is whether or not the arrangement between John Sturgeon, the deceased "newsboy," and The Birmingham Post created the relation of employer and employee within our Workmen's Compensation Statute. Sections 7534–7597, Code 1923.

■ The cause was tried upon an agreed statement of facts which appears in the report of the case. The purpose of such an agreement was of course to facilitate the hearing, save the time, trouble, and expense of examination of witnesses, and at the same time present to the court the essential facts upon which the decision is to turn. Such agreements are not to be given any strained and unnatural interpretation, but are to be reasonably construed in the light of the language used and the object to be obtained.

■■ These preliminary remarks are appropriate, in view of our conclusion that the insistence on appellee's part that the words in the agreement, "permitted" and "required," should be given so wide a significance as to indicate the relationship of master and servant, is untenable.

Considering the connection in which they are found, these words were simply used, in the sense that, under the particular arrangement between defendant and Sturgeon, the latter was under a duty or obligation to do certain things, and in a like sense was at liberty or permitted to do other things. The agreement presumably sets forth all pertinent facts and contains no indication of a delivery of papers to any regular subscribers, but, on the contrary, we think its language inconsistent with any such theory, and will be here so considered.

■■ "The compensation law does not apply where the injured person is an independent contractor, and the relation of employer and employee does not exist. It is not possible to lay down a hard and fast rule or state definite facts by which the status of men working and contracting together can be definitely defined in all cases as employee or independent contractor. Each case must depend on its own facts. Ordinarily, no one feature of the relation is determinative, but all must be considered together." 1 Honnold on Workmen's Compensation, § 66.

■ There is no statement in any of our cases (Ex parte W. T. Smith Lbr. Co., 206 Ala. 485, 90 So. 807; Sloss-Sheffield Steel & Iron Co. v. Crim, 219 Ala. 148, 121 So. 408; Martin v. Republic Steel Co. [Ala. Sup.] 146 So. 276, 279 [1]) indicating a contrary rule, but only to the effect that statutory definitions of the words "employer" and "employee" must control in compensation cases in so far as they tend to modify the common law governing master and servant. 1 Schneider's Workmen's Compensation Law, page 161.

■ It seems to be generally conceded that the law of independent contractors was in no wise changed by the enactment of the Compensation Statutes (1 Schneider's Workmen's Compensation Law, § 37), and this court has given due consideration thereto in the decided cases (Ross & Co. v. Collins, 224 Ala. 453, 140 So. 764; Martin v. Republic Steel Co., supra; Sloss-Sheffield Steel & Iron Co. v. Crim, supra), and our statute (section 7585, Code 1923) inferentially recognizes the continued existence of the rule as to independent contractors by guarding against any fraudulent scheme tending to an evasion of liability.

By our statute (section 7596, Code 1923) employer and employee are defined as follows: "The term 'employer' as used herein shall mean every person not excluded by section 7543 who employs another to perform a service for hire and to whom the 'employer' directly pays wages. * * * The terms 'employee' and 'workman' are used interchangeably and have the same meaning throughout this chapter, and shall be construed to mean. the same. The term 'wages', and 'weekly wages', and such expressions shall, in all cases, unless the context clearly indicates a

[1] 226 Ala. 209.

different meaning, be construed to mean 'average weekly earnings.'"

The comparatively recent case of General Exchange Ins. Corp. v. Findlay, 219 Ala. 193, 121 So. 710, 711, restates the distinguishing characteristics between an independent contractor and that of a servant, and cites several cases from this and other states illustrating the distinction. We take therefrom the following pertinent extract:

"This court has had occasion frequently to point out the distinguishing characteristics between the relation of an independent contractor and that of a servant. A clear and concise statement of such distinction is made in our case of Republic I. & S. Co. v. McLaughlin, 200 Ala. 204, 75 So. 962, to the following effect: The relation is 'determined by whether or not the person for whom he is working "has control over the means and agencies" by which the work is done (Warrior-Pratt Coal Co. v. Shereda, 183 Ala. 118, 62 So. 721; T. C., I. & R. Co. v. Davis, 194 Ala. 149, 69 So. 544; L. & N. R. R. Co. v. Williams, 199 Ala. 453, 74 So. 382), (and) or has control over the means and agencies "by which the result is produced" (Harris v. McNamara, 97 Ala. 181, 12 So. 103). In line with this test is the rule that he is deemed the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents, "not merely in the ultimate result of his work, but in all its details" (Lookout Mt. I. Co. v. Lea, 144 Ala. 169, 39 So. 1017).' For the person to be a servant, the other-party must retain 'the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, not only what shall be done, but how it shall be done' (39 C. J. 35), as he has 'a reserved control or direction of the work' (Alabama Power Co. v. Bodine, 213 Ala. 627, 105 So. 869). 'Giving orders is the role of the master.' Alabama Power Co. v. Bodine, supra.

"An application of this test has been made in numerous cases, with the result of holding that the relation of independent contractor, and not servant, existed where the person was city salesman on commissions, using his own car (Aldrich v. Tyler Groc. Co., 206 Ala. 138, 89 So. 289 [17 A. L. R. 617]); where the person furnished clay by the wagon load to a mudmill of the contractee, getting the clay from pits on lands of the contractee, and was paid by the load (U. S. Cast Iron Pipe & Foundry Co. v. Fuller, 212 Ala. 177, 102 So. 25); where the person mined coal or iron ore for the mine operator, and was paid by the ton mined (U. S. Cast Iron Pipe & Foundry Co. v. Caldwell, 208 Ala. 260, 94 So. 540; Hubbard v. Coffin [& Leak], 191 Ala. 494, 67 So. 697); where the person was holding the owner's car, for the purpose of repairing it in his own way by the job, and free from direction or control of the owner

as to details or manner (Freeman v. Southern Life & Health Ins. Co., 210 Ala. 459, 98 So. 461). This rule was applied in Mississippi to a truck driver selling bread to customers along a route he had selected, wherein the baker did not control him in the manner or method of selling and delivery (Crescent Baking Co. v. Denton, 147 Miss. 639, 112 So. 21); and in Florida, where it is said the right to control the method of work is one of the principal considerations (Gulf Refining Co. v. Wilkinson, 94 Fla. 664, 114 So. 503)."

Numerous cases are to be found in the note to Gall v. Detroit Journal, 19 A. L. R. 1164, where liability to third persons was involved, and the note to Chicago, etc., R. Co. v. Bennett, 20 A. L. R. 678, where liability as between the parties themselves was involved. See, also, 1 Schneider Workmen's Compensation Law, § 37.

True, in Martin v. Republic Steel Co., supra, it was held that the criterion is not whether the owner did in fact exercise supervision, "but rather did he have the right to do so; did he possess the power to control," but the rules for distinguishing between independent contractors and servants as found stated in the Findlay Case, supra, have not been altered by statute or decision, so far as the question of control is concerned, though our cases have recognized that other elements of an independent contractor have been subject to modification. Section 7585, Code, 1923; Ex parte Am. Fuel Co., 210 Ala. 229, 97 So. 711; Ex parte W. T. Smith Lbr. Co., supra.

Measured by the rule of our decisions, we think the agreed facts disclose the relation of employer and employee did not exist between Sturgeon and the defendant, but rather that of an independent contractor.

As to where rested the title to the newspapers delivered to Sturgeon we do not consider a matter of controlling importance. The papers delivered to Sturgeon were either to be returned or accounted for at the end of the day at 1½ cents each, and the arrangement has many of the earmarks of what is termed a "sale or return." 55 Corpus Juris, 483; Robinson & Ledyard v. Fairbanks, 81 Ala. 132, 1 So. 552; Sturm v. Baker, 150 U. S. 312, 14 S. Ct. 99, 37 L. Ed. 1093. Sturgeon's name did not appear on the pay roll or any record of defendant, and the papers were charged on the books of the company at 1½ cents each to the "Bankhead corner," pursuant to custom to charge to the location and not to any individual. And if such a custom stands in the way of denominating the arrangement a "sale or return," then, perhaps, it may be defined as creating the relation of factor and principal, 25 Corpus Juris, 340 and 408, a relationship distinguishable from that of employer and employee, 25 Corpus Juris, 343. But further inquiry into that question is deemed unnecessary and left un-

determined, as neither would establish the relationship necessary for compensation under the statute.

Diligence of counsel has produced but one case which may be considered here directly in point, that of the California Supreme Court in N. Y. Indemnity Co. v. Industrial Acc't Comm., 213 Cal. 43, 1 P.(2d) 12, 15, granting a rehearing and overturning its former opinion in the same case, reported in 294 P. 707. Previously, however, the District Court of Appeals in the same case (N. Y. Indemnity Co. v. Industrial Acc't. Comm., 287 P. 368, 371) had reached the conclusion that Eustace, the newsboy there involved, was not an employee, but the relationship between him and the publisher was somewhat analogous to that of independent contractor, and closely allied to the relation of sales agent. And under similar facts such is now the established rule in that state. Hartford Acc't. & Indemnity Co. v. Industrial Acc't. Comm., 123 Cal. App. 151, 10 P.(2d) 1035; State Compensation Ins. Fund v. Industrial Acc't. Comm., 216 Cal. 351, 14 P.(2d) 306; Associated Indemnity Cor. v. Industrial Acc't. Comm., 115 Cal. App. 754, 2 P.(2d) 51.

While all features of the arrangement are to be considered, yet that of lack of control was held to be of controlling influence in the above-cited authorities, and the reasoning there employed is persuasive here, as in general the same test in doubtful cases as to whether the relation is that of employer and employee, or in the nature of independent contractor, obtains in this jurisdiction.

Perhaps, in the matter of control, the case at hand is stronger for the defendant than in the California cases, as in the latter there appears to have been a limited control and supervision over the work of the newsboys exercised by a district manager of the defendant, which is entirely lacking here. In discussing the question, the California Supreme Court in the case reported in 1 P.(2d), supra, said:

"In the case of Hillen v. Industrial Accident Commission, 199 Cal. 577, 250 P. 570, it was held by this court that the essential test by which to determine whether in doubtful cases the relation between a workman and those for whom he was rendering service was that of an employee or of an independent contractor, was not so much dependent upon whether he received wages or whether he was to devote all or a portion of his time to the performance of his specified service, but was rather dependent upon the extent of control or right of control which the so-called employer was to exercise over its so-called employee. When we undertake to apply the reasoning of that case to the admitted facts of the instant proceeding, we are constrained to hold that the limited amount of control which the publishers of these two newspapers undertook to exercise over the newsboys, including Eustace, who daily purchased from their district manager a specified number of copies of their daily issues for a specific sum, payable in cash or at the close of each day's sales, and who undertook the retailing of the same to such customers among the public at large as they were able to attract or procure at a specified place and price fixed by the publishers, would not as a matter of law be sufficient to constitute such newsboys the employees of the publishers of said newspapers so as to entitle them to receive compensation at the hands of the Industrial Accident Commission in the event of injuries received by them in the course of their activities in making or attempting to make individual sales of the copies of said newspapers. We are satisfied that the finding of the commission upon the undisputed facts presented before it amounted to an erroneous legal conclusion which this court possesses jurisdiction to review.

"The petitioners herein, both through their counsel and through the aid of amici curiæ, have presented much plausible argument as to the effect of upholding the legal conclusion and award of the commission upon the numerous army of more or less irresponsible persons of immature years, of physical infirmities, and of failures in other vocations, who come at length within the classification of newsboys in the far-flung daily or periodical distribution of newspapers and other periodicals to the public at large. The impossibility in the main of exercising any more than a very limited supervision or control over this promiscuous and ever-changing body of assorted individualities occupied from day to day in the vocation known by the title of 'news boys' has been plausibly urged as a reason why the legislature in the adoption and limited application of the Workmen's Compensation Act could not have intended to embrace within its terms this promiscuous and in a' sense large irresponsible class of persons, and that to impose upon the publishers of newspapers and other periodicals responsibility for their individual mischances while pursuing such vocation would work disaster to a very large number of persons who now receive a measure of their livelihood in the retailing of newspapers and other publications, but with respect to whom such publishers could not in reason be held to assume the responsibilities arising out of the established relation of employer and employee. While the foregoing course of reasoning could not be held to be conclusive in determining whether or not such a relation in clear cases existed, it is persuasive in such doubtful cases of asserted jurisdiction as those wherein, as in the instant proceeding, the commission has undertaken as a legal conclusion from undisputed facts to make and to uphold an award. We are of the opinion that it fell into error in so doing in the instant case and that as a consequence

its award to the original applicant herein should be and the same is hereby annulled."

And the District Court of Appeals in the same case, reported in 287 P., supra, followed a like course of reasoning as follows:

"The authorities generally are unanimous in demanding that before the relation of employer and employee may be said to exist, it must appear that the person for whom the service is to be performed has the right of exercising control over the manner in which the work is to be done. In volume 1 of Labatt's Master and Servant many pages of text and footnotes are devoted to a consideration of the single essential element of 'control' in the master; and volume 39 of Corpus Juris is likewise replete in its discussion and illustration of the same feature. But it is apparent that the word 'control' in itself is a generalization which may not be entirely dependable as a guide to a correct conclusion in a situation in which either clear or ambiguous acts or conduct are involved; and so in section 160, volume 1, of Shearman & Redfield on the Law of Negligence (6th Ed.), may be found the declaration that 'he is to be deemed the master, who has the supreme choice, control and direction of the servant, and whose will the servant represents, not merely in the ultimate result of his work, but in all its details.' * *. *

"Whether the newsboy must sell his newspaper for not more than the exact price theretofore fixed by the publisher, or whether to the contrary, he may accept or even solicit a 'tip' or gratuity in advance of such price; whether in making a sale, or offering for sale, an alluring or lurid 'extra,' the newsboy shall remain on the sidewalk in comparative safety, or, at will, may leave that position, dart suddenly and unexpectedly hither and yon in the crowded street, thereby endangering his life or limb, for the purpose of approaching some possible purchaser of his newspaper who may be traveling either in a street car or in an automobile; whether the newsboy shall be seated and remain silent and statuesque, or vociferously and raucously shout his wares and race in a simulated excitement or pretended frenzy from one prospective customer to another; or whether by suavity and polite speech he conduct himself in an insinuating and gracious manner, or by rudeness and roughness and the veritable tactics of a French gamin he proclaim the advisability, if not the absolute and undeniable necessity of the general public acquainting itself at first hand with the latest news of the day—while either or some of such methods of effecting sales may represent the acme of the art of the vocation of a newsboy, dependent upon the temperament or deliberate and studied choice of the individual salesman—the compliance by the newsboy with any of such details apparently would be quite

beyond the 'remote control' or even the suggestion of the publisher of the newspaper."

We accept the reasoning of these cases as sound and applicable to the facts here presented, though without necessarily approving all the language employed. True, Sturgeon was required to call at defendant's office at 11:00 o'clock in the morning each day for his supply of papers, and to be at "Bankhead corner" (his designated territory) at 1:10, 3:00, and 4:10 o'clock in the afternoon to receive later editions; but, after calling for the papers at 11:00 a. m., he was at liberty to follow any route he might choose to the "Bankhead corner," and permitted to sell papers on his way thereto. After arriving at said corner, he was restricted to sales within a given territory, but was not required to traverse it at any given time, or to do so along that route, and was permitted to wander about the route as he pleased, and spend his time as he desired so long as he appeared at the "Bankhead corner" to receive the new editions. There was no district manager, or other person to supervise his work in any manner. The credit extended was only for the period of a day, and, as said in Hartford Accident & Indemnity Co. v. Industrial Accident Commission, 123 Cal. App. 151, 10 P.(2d) 1035, supra, the right to discharge in fact amounted only to a refusal to extend further credit and furnish papers. The fact that a minimum price for the sale of the papers was fixed and limited territory prescribed did not tend to supply the element of control essential for relationship of employer and employee. Nor do we find merit in the argument that such relationship existed in part at least when Sturgeon was on his way to the "Bankhead corner" from the office with his morning supply of papers. This was but one of the stipulations of the arrangement, and no element of control was involved.

Sturgeon's compensation was the difference in the purchase price of 1½ cents and the sale price of 3 cents, plus any tips or gratuities that he might receive, and defendant's interest was in the sale of its papers, which represented only the result of Sturgeon's efforts, and not in the means by which such result was obtained.

The cases of Arne v. Western Silo Co., 214 Iowa, 511, 242 N. W. 539, and Cauchon v. Gladstone, 104 Vt. 357, 160 A. 254, contain interesting discussions upon the question of master and servant and independent contractor, in harmony with the reasoning in the California cases, supra, and those of our own court hereinabove noted.

Under the facts as here presented, we think it clearly appears there was neither sufficient control exercised, or right to do so, reserved, as to support the relation of employer and employee. Ex parte W. T. Smith Lumber Co., 206 Ala. 485, 90 So. 807.

We have examined the authorities noted by counsel for appellee (among them, Angell v. White Eagle Oil & Refining Co., 169 Minn. 183, 210 N. W. 1004; Globe Indemnity Co. v. Industrial Comm., 208 Cal. 715, 284 P. 661; McCarthy v. Dunlevy-Franklin Co., 277 Pa. 467, 121 A. 409; Terry Dairy Co. v. Parker, 144 Ark. 401, 223 S. W. 6), and we think they are each readily distinguishable on the facts. Illustrative is the Angell Case, supra, where, among other distinctions not necessary here to enumerate, was one providing both for liability and workmen's compensation insurance to be secured by the employer, though charged at cost to the employee—a fact recognized by this court as "strong proof" tending to show the relationship was that of master and servant. Ross & Co. v. Collins, 224 Ala. 453, 140 So. 764. And as to the case of Globe Indemnity Co. v. Industrial Comm., supra, the opinion in N. Y. Indemnity Co. v. Industrial Acc't. Comm., 213 Cal. 43, 1 P.(2d) 12, supra, reviews the same and points out the facts which mark the distinction, and that authority therefore needs no further comment here.

The agreed statement of facts has been read and considered by the court in consultation, and compared with the facts appearing in the California decisions, supra, and we find that, though there may be some few minor differences, yet in the main and in all essential details they are substantially the same.

■ We consider the reasoning of those cases as persuasive and in harmony with the rule of law applicable in this jurisdiction. We have recognized that our statute is to be liberally construed to the end that its wise and humane purpose may be advanced, but its provisions are not to be, by construction, extended to cover persons or occupations not within its scope and intent. 1 Schneider's Workmen's Compensation Law, page 161.

The conclusion is that the relation of employer and employee did not exist between Sturgeon and the defendant, and of consequence the award was improperly granted.

The cause having been tried before the court on an agreed statement of facts, the judgment will be reversed and one here rendered in favor of defendant. Section 8599, Code 1923; Hartford Fire Ins. Co. v. Jones, 215 Ala. 107, 110 So. 30.

Reversed and rendered.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.

## On Rehearing.

GARDNER, Justice.

It is charged in brief of counsel for appellee on application for rehearing that the opinion disregards a settled rule of law and is in addition based upon a "gross misconception of the facts." We deem a brief response appropriate.

As to the rule of law we expressly recognized the established rule as stated in Martin v. Republic Steel Co., supra, that it is the reserved right of control rather than its actual exercise that furnishes the test, and our conclusion was that the agreed statement of facts disclosed no such reserved right as to create the relation of employer and employee. We feel that no more need be said as to this insistence.

■ ■ As to the matter of our misconception of the facts, we stated in the opinion, pointing out the purpose of such an agreement, that it was properly to be assumed that all pertinent facts were embraced in the agreed statement of facts, and we think this much is entirely clear. In stating all the essential facts, no mention is made of any district manager exercising any supervision over the newsboys, Sturgeon among them. The burden of proof rested upon petitioner (Ex parte Alabama Dry Docks Co., 213 Ala. 88, 104 So. 251, Ex parte Coleman, 211 Ala. 248, 100 So. 114), and had there been such a manager so exercising supervision, clearly, that would have been a pertinent fact, the omission of which justifies the conclusion that (as all pertinent facts are assumed to be presented) no such fact existed.

The opinion merely stated, in comparing the instant case to that decided by the California court, that here there was no district manager, while in the California case there was such manager, all of which was by way of argument only as tending to demonstrate the instant case was stronger for defendant than was that considered by the California court.

Upon a careful reconsideration we are not persuaded the opinion rendered is erroneous, and the application for rehearing will accordingly be denied.

Application overruled.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.