178 So. 63

## Ex parte BOARD OF SCHOOL COM'RS OF MOBILE COUNTY.

### DAVES et al. v. RAIN.

I Div. 988.

Supreme Court of Alabama.

Dec. 9, 1937.

84

Pillans, Cowley & Gresham, of Mobile, for petitioner.

Francis H. Inge and Inge & Stallworth, all of Mobile, for respondents.

BOULDIN, Justice.

All admit that the sole issue for decision is whether the written contract between Board of School Commissioners and B. A. Lyons is to be construed as creating the relation of master and servant, or that of independent contractor, at common law.

We concur with statement of the law by the Court of Appeals, saying: "It is the general rule of the common law that the relationship of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, not only what shall be done, but how it shall be done."

And as announced in Alabama Fuel & Iron Co. v. Smith, 203 Ala. 70, 82 So. 30, 31, cited by the Court of Appeals, to the effect that such relation exists where the master has "choice, control, and direction" over the servant, who represents or acts for the master, not only in the ultimate result of the work, but in all its details.

And again: "It is the reserved right of control rather than its actual exercise that furnishes the true test of whether the relation between the parties is that of an independent contractor, or of employer and employee—master and servant." Tuscaloosa Veneer Co. v. Martin, 233 Ala. 567, 172 So. 608, 611. See, also, Labatt on Master & Servant, p. 56, § 18; Moll on Independent Contractors, pp. 85, 86; 39 C. J. pp. 1315 to 1319.

Admittedly the solution of the issue turns on the construction of the written contract between the parties set out in the report of the case in the Court of Appeals. Daves v. Rain, 178 So. 59.

The authority of the School Board to provide for the transportation of school children, a responsible task of a public nature, either by letting a contract with proper safeguards to one deemed responsible and trustworthy, or through its own facilities, and servants, under the direction and control of the boards, is not questioned.

Without question, and by the express terms of the contract, the parties undertook to create the relation of contractor, not that of master and servant.

Admittedly this stipulation is not conclusive. It is in the nature of an expression of the legal effect of the instrument as understood by the parties, and is ineffective, if the terms of the contract in fact bring it within the law of master and servant.

But the parties being presumed to know the legal import of their contracts, an express stipulation on the subject is to be taken in connection with the whole, and not disregarded unless the whole is inconsistent with the agreed meaning of the contract.

An attempt to evade responsibility to third persons growing out of the relation of master and servant enters into the inquiry in some cases.

Upon careful study of the contract, we observe the subject-matter of the contract was one of carriage, the transportation by motorbus of school children within a defined zone, over defined routes, to and from a named public school in Mobile county, during the school term. The carrier is termed a "contractor," under bond for the faithful performance of his contract, and protected by a liability insurance policy to be taken out by the board. The contract goes into much detail.

The bus was to consist of a new chassis, furnished and owned by the contractor, on which the board should erect the body in which the children should be carried, the title to the body remaining in the board. The bus was to be maintained and operated by the contractor, at his own expense. The driver was to be the contractor or one employed and paid by him. The contract goes into detail touching the clean and sanitary condition of the bus, storage during vacation, etc., details as to safe operation on the highway, observance of the laws of the road, and the written rules and regulations of the board made a part of the contract. All these are made contractual duties imposed upon the contractor, all fitting and proper in view of the nature of the undertaking.

It appears from certain arguments for respondent that these stipulations are relied upon as evidence of control by the board over the manner and means of accomplishing the ends in view. Quite to the contrary, these stipulations define contractual obligations, rather than require

direction and control over daily operations by the board. The board could give no lawful directions at variance with the contract, and the contractor was bound regardless of direction or control as to these matters. The school board is a body functioning in session, making contracts and performing many other functions pertaining to the public schools. The contract nowhere indicates the board should name an agent controlling and directing the contractor.

■ The contract vests in the Superintendent of Education the power to determine the carrying capacity of the bus. In this he acts for both parties to the contract. He is charged with no duty, either in person or by agent, to see that the contractor in the daily transportation of the children, shall not overload, etc. This was a contractual obligation of the operator of the bus.

■ The contract stipulates quite in detail the schedule to be observed in delivering the children to school and departing with them after school, but leaving time after school is subject to order of the principal. This merely recognizes the authority of the principal, as such, to determine a matter involving the conduct of his school. He is acting as principal, not as an agent of the board controlling the contractor in the manner in which he shall perform the work of transportation.

The contract provides for the periodic inspection of the motorbus by an inspector selected by the board, who shall make a written report. The contractor is charged with the contractual duty to make all needed corrections and repairs pursuant to such report, a breach of which being ground to rescind the contract.

■ Supervision of this character designed to see that the specific work is done in compliance wih the contract does not prevent the relation of independent contractor. Construction contracts, and many forms of transportation contracts, furnish constant examples of such supervision over independent contractors. U. S. Cast Iron Pipe & Foundry Co. v. Fuller, 212 Ala. 177, 102 So. 25; U. S. Cast Iron Pipe & Foundry Co. v. Caldwell et al., 208 Ala. 260, 94 So. 540; Looker v. Gulf Coast Fair, 203 Ala. 42, 81 So. 832; Casement v. Brown, 148 U.S. 615, 13 S.Ct. 672, 37 L.Ed. 582; 39 C.J. pp. 1316 to 1319, § 1518; Id. § 1521, pp. 1219 to 1321.

■ The board has the authority to provide for increased transportation as needed, or to decrease and discontinue, if conditions require. This goes merely to the subject matter of the contract, and in no way affects the issue here. 39 C.J. p. 1321.

The duration of the contract was five years, with provisions for rescission in case of breach of contract on the part of the contractor. Payment was so much per month.

■ The power to rescind and terminate a contract for nonperformance of stipulated obligations continuous in character is not the same as the power to discharge at will. The power to discharge in terms may often be considered in aid of construction, but is not sufficient to determine the relation. The same applies to manner of payment. The true test is control by the master over the manner and means of performance. 39 C.J. p. 1322, § 1525; Id. p. 1521, § 1523; Harris v. McNamara, 97 Ala. 181, 12 So. 103; Martin v. Republic Steel Co., 226 Ala. 209, 146 So. 276; Porter v. Tennessee C., I. & Ry. Co., 177 Ala. 406, 412, 59 So. 255; Birmingham Post Co., v. Sturgeon, 227 Ala. 162, 149 So. 74.

■ On full consideration we are of opinion the trial court was correct in holding the relation of Lyons that of an independent contractor as the contract expressly stipulates. It follows we are not in accord with the views of the Court of Appeals.

Writ of certiorari granted.

All the Justices concur.