980 So.2d 975 (2007)
Minnie PETERSON and Brenda Davis
v.
LOWNDES COUNTY BOARD OF EDUCATION et al.
1051450.
Supreme Court of Alabama.
September 7, 2007.
*976 J. Cecil Gardner of Gardner, Middlebrooks, Gibbons, Olsen & Walker, P.C., Mobile; Sam Heldman of Gardner, Middlebrooks, Gibbons, Olsen & Walker, P.C., Washington, D.C.; Winn Faulk of Faulk & Reed, LLP, Montgomery; and Theron Stokes, Alabama Education Association, Montgomery, for appellants.
James R. Seale, Elizabeth Brannen Carter, and Jayne Harrell Williams of Hill, Hill, Carter, Franco, Cole & Black, P.C., Montgomery, for appellees.
COBB, Chief Justice.
This case presents the issue whether Minnie Peterson and Brenda Davis, who worked with the Lowndes County Head Start program ("Head Start"), were employees of the Lowndes County Board of Education ("the Board"). When Peterson and Davis were terminated from their positions with Head Start, they attempted to contest the termination of their employment to the Lowndes County Head Start Policy Council ("the Policy Council") pursuant to the guidelines listed in the Head Start policy manual. That action proved unsuccessful, and they then sued the Board and other defendants[1] in the Lowndes Circuit Court, asserting that they were employees of the Board and that they were thereby entitled to the procedural protections and remedies under the Fair Dismissal Act, § 36-26-100 et seq., Ala. Code 1975, applicable to, among others, employees of city and county boards of education. After pretrial litigation and discovery, the parties agreed to file cross-motions for a summary judgment to resolve the issue whether Peterson and Davis were employees of the Board. Pursuant to their agreement, the parties stipulated to the facts and legal issue to be considered by the trial court in determining if Peterson and Davis were employees of the Board. After reviewing those facts, receiving briefs, and hearing oral arguments, the trial court issued an order, stating in part:
"The defining issue before the Court is a legal one and amounts to a determination by this Court as to whether or not the Plaintiffs are employees of the Lowndes County Board of Education. Upon consideration of the evidence before it, the Court finds that the Plaintiffs are not employees of the Lowndes County Board of Education and that there is no genuine issue as to any material fact pertaining thereto."
Accordingly, the trial court entered a summary judgment for the Board and the other defendants and denied Peterson and Davis's motion for a summary judgment. Peterson and Davis filed a motion to alter, amend, or vacate the judgment, pursuant to Rule 59, Ala. R. Civ. P. The trial court *977 heard oral arguments and received briefs on that motion; the motion was subsequently denied by operation of law. Peterson and Davis appealed.
Our standard of review for a summary judgment is settled:
"In reviewing the disposition of a motion for summary judgment, `we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988), and whether the movant was `entitled to a judgment as a matter of law.' Wright v. Wright, 654 So.2d 542 (Ala.1995); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is 'substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala.1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990)."
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala.1997).
The facts as stipulated by the parties are as follows: Peterson was employed as a Head Start classroom teacher in Lowndes County. Davis worked as a classroom assistant in Peterson's class. Head Start is a federally funded program designed to assist underprivileged preschool-aged children and their families with academic preparedness before the children begin traditional school. The Board issues a resolution annually, delegating the authority to approve policy and procedure for the operation of Head Start in Lowndes County to the Policy Council. Arthur Nelson is an employee of the Board who serves as the director of Head Start; he recommends the hiring of employees for Head Start and the termination of employment to the Policy Council for its review. In July 1999, Peterson's and Davis's employment was terminated by the Policy Council.
In order to determine whether Peterson and Davis are employees of the Board, we consider general Alabama law pertaining to employment relationships. In Davenport-Harris Funeral Home, Inc. v. Chandler, 38 Ala.App. 463, 88 So.2d 875 (1956), a minor was injured when his motorcycle collided with the lead vehicle in a funeral procession. The minor and his father sued the funeral home to recover damages under the theory of respondeat superior. Utilizing the rule set out in Motor Terminal & Transportation Co. v. Simmons, 28 Ala.App. 190, 193, 180 So. 597, 599 (1938), the Chandler court determined that the driver of the lead car in the funeral procession was not an employee, i.e., a servant, of the funeral home:
"`The general rule is that to constitute the relationship between master and servant for the purpose of fixing liability on the former for the acts of the latter under the doctrine of respondeat superior, it is indispensable that the right to select the person claimed to be a servant should exist. Furthermore, something more than the mere right of selection is essential to the relation. This right *978 must be accompanied with the power and duty to control the alleged servant while in his employ; this, it is said, is one of the principal tests of the relation.'"
38 Ala.App. at 466, 88 So.2d at 877. Although the theory of respondeat superior is not presented in this case, we apply the legal test in Chandler in determining whether an employment relationship exists between Peterson and Davis, on the one hand, and the Board, on the other. According to Alabama law, whether Peterson and Davis are considered to be employees of the Board depends upon the extent to which the Board had a right to select and control them while they were employed at Head Start. Chandler, supra.
It has been long established that to be considered an employer, one must have the authority to select, control, and supervise the employee. Birmingham Post Co. v. Sturgeon, 227 Ala. 162, 149 So. 74 (1933). In Sturgeon this Court examined the workers' compensation claim of a deceased newsboy, concluding that the Birmingham Post Company neither held nor exercised control over the newsboy necessary to constitute a relationship of employer to employee. In Home Insurance Co. v. Graydon, 335 So.2d 645 (Ala.1976), this Court again discussed the necessity of an employer's right of control over the purported employee to establish an employment relationship, stating:
"Generally, whether the injured party was in fact an employee of the insured is to be determined by the master servant relationship, and whether the injured party is an employee of the insured depends upon the particular circumstances of the case. In accordance with this general principle of employment law, the existence of control over the employee is an essential element in determining by whom he is employed."
335 So.2d at 647.
The record indicates that the Policy Council, rather than the Board, hired and fired Peterson and Davis. However, 45 C.F.R. § 1304.50(d)(1)(xi) identifies the responsibilities of those operating a Head Start program and specifically discusses a partnership between the governing body (here, the Board) and a policy council regarding the hiring and firing of Head Start personnel:
"(1) Policy Councils and Policy Committees must work in partnership with key management staff and the governing body to develop, review, and approve or disapprove the following policies and procedures:
". . . .
"(xi) Decisions to hire or terminate any person who works primarily for the Early Head Start or Head Start program of the grantee or delegate agency."
(Emphasis added.) Federal regulations indicate not only that a Head Start policy council possesses the authority to work with a governing body  the group with the legal and fiscal responsibility for administering the Head Start program (45 C.F.R. § 1304.50(a)(5))  regarding the hiring and termination of personnel, but also that the council is encouraged to work with the governing body to reach decisions regarding the hiring and termination of Head Start personnel. The Board's ability to participate in personnel decisions equates to a "right to select" indicative of a master-servant relationship under Alabama law.
The record does not indicate that the Board actively exercised control over the daily classroom activities of Peterson and Davis. However, the Code of Federal Regulations indicates that the governing body (here, the Board) is to be included in *979 the policy council's decisions regarding program planning and goals. 45 C.F.R. § 1304.50(d)(1)(ii-iv) reads as follows:
"(1) Policy Councils and Policy Committees must work in partnership with key management staff and the governing body to develop, review, and approve or disapprove the following policies and procedures:
". . . .
"(ii) Procedures describing how the governing body and the appropriate policy group will implement shared decision-making;

"(iii) Procedures for program planning in accordance with this part and the requirements of 45 CFR 1305.3;
"(iv) The program's philosophy and long- and short-range program goals and objectives. . . . "
(Emphasis added.) Under these regulations, the Board had the authority to influence the direction and decisions of Head Start that impacted the daily employment duties and day-to-day activities of its instructors.
The Head Start policy manual, a copy of which is made available to new employees, also recognizes the intended cooperation between the governing body or grantee, i.e., the Board, and Head Start:
"Head Start personnel policy will be formulated in compliance with HHS/ACF [Health and Human Services Department/Administration for Children and Families] and Grantee policies. . . . [C]hanges in personnel policies and procedures will be made only by formal action of the Policy Council with Board approval."
Thus, the policy manual indicates that Board approval is necessary for formal action of the Policy Council pertaining to personnel policy changes, which further evidences the Board's ability to influence the employment of Peterson and Davis.
The appeals process for personnel grievances of Head Start employees, as characterized in the policy manual, includes the Board's ability to intervene on behalf of the aggrieved employee. Chapter XVI, Section XVI.I of the policy manual states:
"The Director/Supervisor shall communicate his/her decision to the aggrieved in writing within five (5) working days of receipt of the written grievance. If the aggrieved is not satisfied with the disposition of his/her grievance at Level Two, Step One, he/she may within five (5) working days present his/her grievance to the Policy Council. If this decision is not acceptable to the aggrieved, the [B]oard of Education (grantee) will intervene."
(Emphasis added.) Again, the record indicates that the Board retained a right of control over the employment of Peterson and Davis.
Nelson, the director of Head Start, made it clear in his undisputed testimony that the Board directly participates in the hiring process of the director of Head Start. Nelson stated:
"Q. All right. And who hired you for that job (director of Head Start)?
"A. The Board of Education along with the policy council. Head Start Policy Council. . . .
"Q. . . . [E]xplain that for us, please?
"A. Well, the Lowndes County Board of Education is the legal  has the legal responsibility for the Head Start Program. They are the grantee. The Lowndes County Head Start Program is a federally funded program, and, of course, all decisions that are made as related to the Head Start Director, it must be in conjunction with the Board and policy council both agreeing to the hiring of the director."
*980 The Board is integral to the hiring of the director of Head Start, and it is undisputed that the director, Nelson, is an employee of the Board. The Board's control over Nelson's employment, and his direct involvement with the Policy Council as director of Head Start is indicative of the Board's resulting ability to influence, or control, the employment of other Head Start workers such as Peterson and Davis.
We will not address Peterson and Davis's additional arguments on appeal because these arguments were not raised at the trial level. This Court has stated: "Our review is limited to the issues that were before the trial court  an issue raised on appeal must have first been presented to and ruled on by the trial court." Norman v. Bozeman, 605 So.2d 1210, 1214 (Ala.1992) (citation omitted). See also Bosarge Offshore, LLC v. Compass Bank, 943 So.2d 782 (Ala.2006), and Shewmake v. Estate of Shewmake, 940 So.2d 260 (Ala. 2006).
Under the circumstances presented by this case, we conclude that no genuine issue of fact exists with respect to the Board's right to hire and its right of control over Peterson and Davis. Because the trial court erred in entering a summary judgment for the Board and the other defendants, we reverse its judgment and remand the case to the trial court for further proceedings consistent with our holding in this opinion that Peterson and Davis are employees of the Board and thus are entitled to the procedural protections and remedies under the Fair Dismissal Act.
REVERSED AND REMANDED.
LYONS, WOODALL, and PARKER, JJ., concur.
SMITH, J., concurs in part and concurs in the result.
SEE and MURDOCK, JJ., concur in the result.
STUART and BOLIN, JJ., dissent.
SMITH, Justice (concurring in part and concurring in the result).
I believe that the evidence[2] in this case demonstrates that Peterson and Davis were employees of the Board. Although the Board did not actively exercise control over Peterson and Davis's daily activities, the evidence indicates that an employee of the BoardArthur Nelsonserved as the director of Head Start. In this capacity, Nelson made recommendations to the Head Start Policy Council on the hiring and firing of Head Start employees. Additionally, Peterson and Davis attached to their complaint portions of a document titled "Lowndes County Board of Education Project Head Start Personnel Policies and Procedures Manual," dated as "Approved by Policy Council Feb. 1996." This document states in "Chapter I.2," as the main opinion notes, that "Head Start personnel policy will be formulated in compliance with . . . Grantee [Board] policies," and in "Chapter I.4" that changes in personnel policies and procedures "will be made only by formal action of the Policy Council with Board approval."
On appeal, the Board argues that this portion of the manual appears in an "outdated" 1996 version of the policy manual *981 and was never presented as an exhibit during the consideration of the summary-judgment motions. Additionally, the Board argues that the 1999 version of the manual, portions of which appear as an exhibit to the Board's summary-judgment motion, contradicts the 1996 version of the manual. Board's brief at 24.
I believe that the portions of the 1996 manual referred to in the main opinion were properly before the trial court. In its motion for a summary judgment, the Board specifically relied on "[a]ll pleadings of record in this case," including its own exhibits attached to the motion. "Chapter I.2" of the 1999 version is very similar to the 1996 version and likewise states that "Head Start personnel policies will be formulated in compliance with . . . Grantee policies." "Chapter I.4" of the 1999 manual is not found in the exhibit presented by the Board; therefore, I cannot conclude that the 1999 manual contradicts the 1996 manual in this regard. Based on the evidence establishing Nelson's duties as director and the policies contained in the "manuals," I concur with the main opinion that Peterson and Davis were employees of the Board.
The main opinion relies on certain federal regulations to reach its holding; however, I am not convinced that this authority had been cited to the trial court before it ruled on the summary-judgment motions. Therefore, as to that discussion I express no opinion.
MURDOCK, Justice (concurring in the result).
In its brief to this Court, the Board emphasizes that it is the "right" to select employees that should be dispositive in this case.[3] The Board was and is the "grantee" under Lowndes County's Head Start program. It therefore was the Board that had the legal right to select the employees of the Head Start program. In this case, however, the Board acquiesced in the selection of employees made by the director of the Lowndes County Head Start program. The fact that it did so does not make those selections employees of that director or any other entity except the Board. I therefore agree with the conclusion in the main opinion that Peterson and Davis must be deemed employees of the Board.
NOTES
[1] A complete list of all the defendants in this case is as follows: Lowndes County Board of Education; Eli Seaborn, the former superintendent of the Lowndes County Board of Education; and Robert Lane, Ben Davis, Steven Foster, Annie Hunter, Robert Grant, Head Start director Arthur Nelson, and Head Start education manager Patricia Stiles, members of the Lowndes County Board of Education. The individual defendants were sued in their individual and official capacities.
[2] Although the parties in this case refer to "stipulated" facts, the record contains no formal document setting forth stipulated facts; indeed, the parties appear to dispute what facts they actually agreed to and whether a stipulation of facts was even appropriate in this case. However, I note that the trial court's summary-judgment order indicates that it considered "the evidence before it," and from all that appears, the trial court considered the evidence in the entire record.
[3] My comments are limited to a discussion of this criterion because of the emphasis given it by the Board. To the extent, as the main opinion correctly notes, an employment relationship also depends on the existence of control over the employee, I agree with the result reached by the main opinion in regard to this additional criterion, but not with all the analysis in that opinion in regard to it.