PITTMAN, Judge.
These appeals arise from a judgment entered by the Montgomery Circuit Court concerning the legality of the removal of Susan Salatto from the office of president of Southern Union State Community College (“Southern Union”).
On January 24, 2008, the Alabama State Board of Education (“the Board”) voted to remove Salatto from the office of president of Southern Union over the objection of her counsel, who contended that the removal could not validly occur except under the authority of, and consistent with the terms of, the Fair Dismissal Act, § 36-26-100 et seq., Ala.Code 1975 (“the FDA”). Salatto simultaneously initiated administrative proceedings and a civil action seeking review of the propriety of her removal from office, and she also sought administrative review of Southern Union’s election to treat as ended Salatto’s previous employment at that institution. The two administrative proceedings were consolidated into one proceeding, after which Southern Union and the Board sought dismissal on the claimed bases that the FDA did not apply to Salatto’s employment as president of Southern Union or to her former employment by Southern Union as a dean; those parties also sought a stay of the administrative proceedings pending the outcome of the civil action. The administrative law judge who had been assigned Salatto’s administrative proceedings issued an order on May 23, 2008, declaring that Salatto’s removal as president violated the FDA and that, alternatively, she was entitled to return to work in a previous position that she had held at Southern Union.
The Board, Southern Union, and Southern Union’s president then sought review of the administrative decision in the Montgomery Circuit Court by asserting claims in Salatto’s pending civil action, and those parties also sought a stay of the administrative law judge’s order (which request was denied by the circuit court).[1] Salatto filed a motion seeking a summary judgment in her favor as to her claims and a judgment on the pleadings in her favor as to the counterclaims of the other parties (who opposed Salatto’s motion). On August 24, 2010, the circuit court entered a judgment upholding the decision of the administrative law judge and ordered implementation of that decision, and it denied all other relief sought by the parties.
Southern Union, the Board, and Southern Union’s president have appealed from the circuit court’s judgment upholding the decision of the administrative law judge. *111 Although Salatto has cross-appealed, she does not argue in her brief on appeal that the circuit court’s judgment in her favor was erroneous or adversely affected her interests, and it is well settled that dismissal is appropriate in such circumstances. See Ex parte Jefferson Cnty. Sheriff’s Dep't, 13 So.3d 993, 996 (Ala.Civ.App.2009).
The central issue raised by the parties in this case is whether Salatto’s dismissal as president of Southern Union is governed by the FDA such that she is entitled to the procedural and substantive rights set forth therein. To resolve that issue, we first look to the text and the history of pertinent portions of the FDA. Since its enactment in 1983, the FDA has provided that certain procedures are to be followed when county and city boards of education and two-year educational institutions under the direction of the Board seek to terminate the employment of “employees” of those entities. See Ala.Code 1975, § 36-26-100. Stated another way, for the FDA to apply to a particular person, he or she must be an employee of an entity covered under the FDA. See Holland v. Pearson, 20 So.3d 120, 124 (Ala.Civ.App.2008) (noting that if one is not employed by a covered entity, one would not be an “employee” for FDA purposes).
The position taken in this litigation by Salatto, which was adopted by the administrative law judge in his order and which was later endorsed by the circuit court in its judgment upholding that order, is that Salatto was an employee of Southern Union, which is a two-year educational institution under the direction of the Board, at the time that termination of her employment was sought. That Southern Union is a state-affiliated junior college is beyond doubt. See Ala.Code 1975, § 16-60-130 et seq.; see also Executive Order No. 3 (September 3, 1968) (ratifying state acquisition of the former Southern Union College). However, simply because Salatto served as president of Southern Union does not resolve whether she was an employee of Southern Union.
In analyzing whether a person is an “employee” of a covered entity under the FDA, Alabama courts are guided by “general Alabama law pertaining to employment relationships.” Peterson v. Lowndes Cnty. Bd. of Educ., 980 So.2d 975, 977 (Ala.2007). In Peterson, our supreme court observed that whether particular persons may properly be deemed employees of a covered entity “depends upon the extent to which the [entity] had a right to select and control them while they were employed-” Id. at 978. Peterson also quoted language from Davenport-Harris Funeral Home, Inc. v. Chandler, 38 Ala.App. 463, 466, 88 So.2d 875, 877 (1956), indicating that the right to select the person claimed to be an employee is an indispensable element of an employment relationship. 980 So.2d at 977-78.
What entity holds the right, under Alabama law, to select the president of a two-year college such as Southern Union? Under Alabama law, the authority to make that selection is vested in a single entity: the Board, acting pursuant to the recommendation of the chancellor (ie., chief executive officer) of the Postsecondary Education Department.
“The State Board of Education, upon recommendation of the Chancellor, shall be authorized to:
[[Image here]]
“(3) Appoint the president of each junior college and trade school, each president to serve at the pleasure of the board.”
Ala.Code 1975, § 16-60-111.4. In DeWitt v. Gainous, 628 So.2d 418, 420 (Ala.1993), the provisions of that statute were held to *112 permit the Board to unilaterally terminate a person’s presidency at a state junior college: “Under ... § 16-60-111.4(8).... the presidents of Alabama’s junior colleges are at-will employees of the Board of Education and serve at the pleasure of the Board.” (Emphasis added.)
Although DeWitt did not involve an FDA challenge to a president’s summary discharge, a subsequent decision of the United States District Court for the Middle District of Alabama did examine the interplay between the FDA and postsec-ondary-education presidents. In Shuford v. Alabama State Board of Education, 978 F.Supp. 1008 (M.D.Ala.1997), aff'd, 152 F.3d 935 (11th Cir.1998) (table), a former technical-college president contended, among other things, that he had been discharged in contravention of due-process principles and asserted that, among other things, the FDA gave him a property interest in his position as president. 978 F.Supp. at 1022-23. After noting the holding in DeWitt, the federal district court rejected the president’s property-entitlement claim, noting that the FDA contained (at that time) an exception from its provisions to the effect that the employment of “ ‘employees who [were] ... otherwise covered by ... [an]other state statute’ ” at the time that the FDA had been originally adopted in 1983 was not intended to be included within the scope of the FDA. 978 F.Supp. at 1024 (quoting Ala.Code 1975, § 36-26-100, as it read in 1997).
Salatto correctly notes that the Alabama Legislature has not remained silent as to this issue since Shuford was decided. In 2002, an amendment to the FDA was enacted that deleted from the FDA the exception pertaining to coverage by “other state statute[s].” Act No. 2002-508, Ala. Acts 2002. In Glass v. Anniston City Board of Education, 957 So.2d 1143 (Ala.Civ.App.2006), we held that an attendance officer employed by a municipal education board was, by virtue of the 2002 amendment to the FDA, entitled to the protections of the FDA despite the existence of other statutes addressing that board’s dismissal powers. Although this court’s interpretation of the 2002 amendment to the FDA in Glass removes the statutory underpinning of Shuford (while not affecting its due-process analysis), Glass did not address DeWitt or mention it in any way, nor did the 2002 amendment alter those provisions of the FDA limiting its scope to, in pertinent part, “persons employed by ... two-year educational institutions under the control and auspices of the State Board of Education.” Ala.Code 1975, § 36-26-100 (emphasis added).
Salatto posits in her principal appellate brief that the only argument that can be properly marshaled against deeming her included within the FDA is that there is a preexisting statute declaring two-year college presidents to be “at-will” employees. However, § 16-60-111.4(3) does not merely address the nature of employment of a two-year college president; it localizes the source of the core employment power of selection as to such presidents in the Board, not the colleges themselves. The Board, although mentioned in § 36-26-100 as controlling two-year educational institutions that are covered entities under the FDA, is not itself a covered entity under the FDA. We noted in Franks v. Jordan, 55 So.3d 1218, 1223 (Ala.Civ.App.2010), that, “unless a particular entity is listed in § 36-26-100, its employees will not be covered by the FDA” and will not have “substantive or procedural employment rights under the FDA.” Thus, the legislature in 2002 acted to eliminate an exclusion that might defeat the right of otherwise-covered “employees” to procedural and substantive protections un *113 der the FDA, but it did not by inclusion place any persons employed by other entities, such as the Board, within the category of “employees” under the FDA.
Salatto also contends that the circuit court’s judgment may be upheld on the rationale that she was actually an employee of both the Board and Southern Union. However, Salatto does not demonstrate in her appellate brief that Southern Union, as a public entity, had any right of control over her selection as president or of the means by which she carried out her duties as president. Salatto herself, by statute, was empowered during her presidency to act on behalf of Southern Union to make hiring decisions as to its faculty and staff (albeit according to qualifications prescribed, and regulations adopted, by the Board), see Ala.Code 1975, § 16-60-111.7; however, it is absurd to construe that power to include a legal right of a president to, in effect, hire or fire himself or herself. We agree with the appellants that the legislature has created a chain of command in this area that is simple to fathom — just as the members of the faculty and staff of Southern Union are answerable to its president as to the performance of their duties, the president of Southern Union is answerable to the Board as to the performance of his or her duties. Additionally, that Salatto may have received compensation for her services,[2] and related income-tax documents, under Southern Union’s institutional name does not negate the proposition that, by statute, the Board alone was responsible for Salatto’s'hiring as president and alone controlled the exercise of her duties.[3]
Salatto further contends, and the administrative law judge determined, that her prior employment by Southern Union in various academic roles between 1976 and 2004, when she became interim president of another two-year college, qualified her for rights under the FDA. That argument presupposes that FDA rights, once accrued, cannot be divested by leaving an academic post at a two-year college covered by the FDA for a president’s position at another institution, which position, for the reasons we have stated herein, is necessarily not employment by that institution. Although the legislature has provided, with respect to teachers employed at public elementary and secondary schools who have acquired “continuing service” status, for retention of tenure rights in the event that such teachers are promoted to an administrative or supervisory position, see generally Ala.Code 1975, § 16-24-2, the legislature has elected to delegate the issue of making tenure policy with respect to two-year colleges to the Board, see Ala. Code 1975, § 16-60-111.4(5), and Salatto cites no portion of the FDA or any Board policy that parallels § 16-24-2 in this respect. Simply put, Salatto, on January 24, 2008, had long ceased to be an employee of Southern Union who could claim any FDA rights, and she cannot properly tack on any previous employment experience in qualifying employment to obtain FDA rights in a wholly different area. See Franks, 55 So.3d at 1224.
*114 Our conclusions with respect to the inapplicability of the FDA to Salatto’s employment as president of Southern Union necessarily impact the validity of the administrative law judge’s order that was affirmed by the circuit court. The administrative proceedings initiated by Salatto in an effort to cause rescission of her discharge were initiated under Ala.Code 1975, § 36-26-115, providing for direct appeals to administrative law judges in the event a hearing due under the FDA has been denied; thus, both of her administrative proceedings were implicitly predicated upon the applicability of the FDA to her situation. Because the FDA did not apply to Salatto, however, we must conclude that the administrative law judge did not have jurisdiction to decide the dispute between Salatto and the Board. The circuit court similarly erred in failing to recognize the inapplicability of the FDA to Salatto’s employment as president of Southern Union.
Based upon the foregoing facts and authorities, we reverse the judgment of the circuit court upholding the administrative law judge’s order concluding that Sa-latto was discharged in contravention of the FDA. Further, on the authority of Shuford, supra, we conclude that because Salatto necessarily had no protectable interest in her employment, her constitutional challenges arising from her discharge must necessarily fail as a matter of law; thus, we decline her request to remand as to those issues. We instead reverse the judgment and remand the case for the entry of a judgment dismissing the case and directing the administrative law judge (a) to vacate his order and (b) to dismiss both administrative proceedings initiated by Salatto.
REVERSED AND REMANDED WITH INSTRUCTIONS AS TO THE APPEAL; CROSS-APPEAL DISMISSED.
THOMPSON, P.J., and BRYAN and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.

. The Board, Southern Union, and Southern Union’s president petitioned for a writ of mandamus, seeking review of the circuit court’s denial of the stay order; however, this court denied that petition as having been filed beyond the presumptively reasonable time set forth in Rule 21(a), Ala. R.App. P. Ex parte Southern Union State Cmty. Coll., (No. 2071238, October 22, 2008) (Ala.Civ.App.2008).

. The record reflects that the Board by resolution has adopted a schedule governing salary payments to “personnel” (including presidents) "employed at " (not by ) two-year colleges.

. Similarly, that Salatto was afforded insurance under the Public Education Employees’ Health Insurance Plan is not material given that the statutory definition of an "employee” for purposes of such coverage is "[a]ny ... person who is employed full-time in any public institution of education,” not by any public institution of education. Ala.Code 1975, § 16 — 25A—1(1) (emphasis added).